NEW OMAHA THOMSON-HOUSTON ELECTRIC LIGHT COMPANY V. JOHNERSON C. ROMBOLD.*

FILED FEBRUARY 9, 1905.  No. 13,963.

1. **Law of Case.** *Held,* That all questions involved in this controversy which were examined and determined in the former opinion on this case, reported in 68 Neb. 54, except the question considered in our second opinion in the same case, 68 Neb. 71, are governed by the "rule of the law of the case" and should not be reexamined unless clearly erroneous.

2. **Evidence: REVIEW.** Action of the trial court in the admission of evidence examined, and *held* not prejudicial.

3. **Instructions** examined, and *held* to have fairly covered every question at issue in the controversy.

ERROR to the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*W. W. Morsman* and *Greene, Breckenridge & Kinsler,* for plaintiff in error.

*Crane & Boucher* and *T. J. Mahoney, contra.*

* Rehearing denied. See opinion, p. 272, *post.*

OLDHAM, C.

On the 12th day of June, 1899, Johnerson C. Rombold, plaintiff in the court below, filed his petition in the district court for Douglas county, against the defendant electric light company, alleging, in substance, that on March 22, 1898, he entered the employ of the defendant company as a lineman in the city of Omaha, it being his duty under the direction of the defendant to erect poles and string wires in the streets of said city, and that he continued in such employ up to and including a part of July 1, 1898, or a period of a little more than three months. He further alleged that at about five o'clock P. M. on said July first, he and his fellow workmen were engaged in stringing wires on poles and cross-arms at Jones street, between 4th and 5th streets in said city; that in the course of his employment he was directed by defendant to climb a certain pole to a height of about 45 feet, and string a wire upon the top cross-arm; that on this pole there were eight cross-arms, about 20 inches apart, and on each cross-arm from four to six electric and telephone wires 16 inches apart, about 28 of the wires being insulated electric light wires; that on the second cross-arm from the top, the first and second wires on the north side of the pole were insulated and carried a heavy current of electricity; that each of these wires were spliced at a point about two feet west of the cross-arms, the insulation being removed and the wires twisted together, the bare ends of the wires being allowed to extend out about an inch from the main wire; that the splices were negligently made, in that there was a failure to cover them with insulating material or "taping," to protect employees and others from coming in contact with such exposed wires; that plaintiff climbed up this pole on the east side of the cross-arm, strung the wire at the north end of the top cross-arm and descended to the west side of the cross-arms between the first and second wires; that when his feet were on the fourth cross-arm from the top

his right arm came in contact with the uncovered wire extending from the splices next to the pole, and at the same time his back came in contact with the uncovered wire extending out from the splices on the second wire from the pole; that he thereby became "short-circuited," receiving an electric shock which rendered him unconscious, causing him to fall to the ground, breaking both feet and right ankle and necessitating the amputation of his right foot. Because of these injuries he prayed a judgment for $25,000.

The defendant for its amended answer at the last trial of the cause in the court below denied specifically that it was its duty to insulate the wire complained of in the petition. Defendant also specifically alleged that the defects complained of were open and obvious and that the plaintiff assumed the risk, by virtue of his employment, of injuries from contact with them. That the defects could have been seen by plaintiff by the exercise of ordinary care, and that he was guilty of contributory negligence in failing to avoid them. The answer also alleged that on the 12th day of October, 1898, the plaintiff signed a release and received from defendant $325 in full satisfaction and discharge of the claim set forth in the petition. The release pleaded in the answer was as follows:

"Received of New Omaha Thomson-Houston Electric Light Co., this 12th day of October, 1898, the sum of three hundred and twenty-five dollars, in full satisfaction and discharge of all claims accrued or to accrue in respect of all injurious results, direct or indirect, arising or to arise from an accident sustained by me on or about the first day of July, 1898, while in the employment of the above. $325.                    J. C. ROMBOLD.
                              "Witness, W. F. WHITE,
                                 "Address, Omaha, Neb."

The plaintiff replied, denying the allegations of the amended answer, except as alleged in the petition, and alleged that he was induced to sign the release by fraud

practiced upon him by the misrepresentations of W. F. White, superintendent of the defendant electric light company, and by the pretended receipt being misread to him by George A. Gilbert, superintendent of the Employers Liability Assurance Company, as though it were but a receipt to an insurance company for his hospital expenses and medical attendance. He denies that any mention was made to him of any settlement with the electric light company for his injuries, but says that superintendent White represented to him that as soon as he had recovered sufficiently, the electric light company would give him $500 and restore him to a good position in their employ, and that plaintiff was not in a fit mental or physical condition to enter into a contract when the alleged receipt was signed. We have thus stated the issues somewhat at length, although this case is now before this court a third time for review, and although at its first hearing the issues then arising between these parties were very carefully and succinctly stated in an able and well considered opinion by HASTINGS, C., reported in 68 Neb. 54. This opinion affirmed the judgment of the district court in favor of plaintiff for $15,000 damages, but on a rehearing a second opinion was written by ALBERT, C., officially reported in 68 Neb. 71, reversing the judgment for a single error, that of the trial court in giving the eighth paragraph of instructions, and reaffirming and approving all other conclusions reached by Commissioner HASTINGS. When the cause was remanded to the district court in conformity with this latter opinion, on a second trial to a jury in the district court, plaintiff was awarded a judgment of $11,400, and to reverse this judgment the defendant electric light company again brings error to this court.

At the outset of this discussion we are confronted with a contest between the able counsel for plaintiff and defendant as to what, if any, questions now involved in this controversy have been passed upon by this court in our former opinions, so as to be governed by the "rule of the law of the case." It is contended by counsel for the

electric light company, because the opinion by ALBERT, C., set aside the former judgment of this court and remanded the cause for a new trial in the court below, no question now involved in the controversy can or should be controlled by the law of the case. While, on the other hand, it is contended by counsel for Rombold that every question determined in the first opinion by HASTINGS, C., is specifically reaffirmed in the subsequent opinion, with the exception of the action of the trial court in giving the eighth paragraph of instructions, and that each of these several questions so passed upon in our first opinion are within the rule and should not again be examined unless clearly wrong. Defendant company urged in support of its contention that the issues were changed by the filing of an amended answer at the last trial and by procuring additional testimony, particularly that of one Holdrege, its present general manager. An examination of the issues existing at the time of our former opinions shows that so far as the petition and reply of the plaintiff Rombold is concerned there has been no change whatever in the substance of the issues; that at the time of the first trial of the cause, defendant by its answer put in issue each of the defenses now relied upon, and in addition to this it put in issue the truth of the allegation of plaintiff's petition as to the existence of the untaped splices on the wires, which were alleged to have been the cause of the injury. The electric light company in its brief says that at the time of the first trial of the cause it did not believe that such untaped splices were upon the wires, but that after the trial it became convinced of the truth of this allegation, and for that reason filed an amended answer, conceding their existence. Now, the only manner in which the amended answer changed the issues, so far as the fact of the existence of the untaped splices and the manner in which the plaintiff Rombold was injured, was to admit these allegations, which were formerly denied. The company in its amended answer did plead with much more particularity and precision its defense of the assumption

of the risk by plaintiff Rombold by reason of his employment, and also of the defense that the defect was open and obvious, but each of these defenses had been offered at the first trial and were treated both by the trial court and by this court as having been sufficiently pleaded. The issue of settlement was pleaded at the first trial, and the evidence touching this issue and the fraud alleged to have been perpetrated upon Rombold in procuring his signature to the receipt are substantially the same as formerly pleaded and passed upon by Commissioner HASTINGS in our first opinion. So that the only effect of the alleged change of issues by the amended answer was to relieve plaintiff Rombold of the burden of proving the existence of the untaped splices, and the manner in which he claims to have been injured.

Nor do we see anything in the testimony of the new witness Holdrege, an electric engineer and present manager of defendant company, offered at the last trial, to make a material change in the evidence. We have carefully examined this new evidence and the witness appears to have been fair and impartial in his testimony. He knew nothing about the accident, was at the time it occurred, according to his testimony, working as lineman for a telephone company in Chicago; he has only been connected with defendant company since the first of the year as he states. He never worked as a lineman for an electric light company and admits that the wires of an electric light company are charged with a much higher and more dangerous current of electricity than those of a telephone company; that the necessity of insulation is much greater on electric light wires than on telephone wires. He also testifies from his knowledge of the business that it is the duty of an electric light company to insulate its wires, and that when a service wire, as is conceded to have been the fact in this case, has been disconnected, the splices should be immediately taped and insulated by the lineman who disconnects the wire. He also testifies that no lineman is permitted to tap the wires of an electric light com-

pany without being ordered to do so by his superiors, and that when a service wire is disconnected, it can only be done by order of the company and that a lineman ordered to do so is expected to insulate and tape the splices as soon as the wire is disconnected. He is of the opinion from his knowledge of the business that it is the duty of a lineman, whether stringing wires or otherwise employed, to look for and report or insulate any untaped splices he may discover. On this branch of the case his testimony is merely cumulative of that offered at the other trial, and only adds one more witness to a fact testified to by several others at the former hearing. We therefore conclude that all questions determined in the first opinion by Commissioner HASTINGS, except the question involved in the principle announced in the eighth paragraph of the instructions formerly given, are governed by the "rule of the law of the case" and should not be further considered unless clearly erroneous. *Mead v. Tzschuck*, 57 Neb. 615; *Home Fire Ins. Co. v. Johansen*, 59 Neb. 349; *Wittenberg v. Mollyneaux*, 59 Neb. 203.

In our former opinion on this case we held in brief that it was not error to submit to the jury whether the defendant company had taken reasonable care to provide a safe place for plaintiff to work under all the facts and circumstances surrounding the controversy; and also that whether due care was used by plaintiff in avoiding the injury was a question for the jury; that whether plaintiff had assumed the risk was also a question for the jury, and whether or not the alleged receipt had been procured from plaintiff by fraud and misrepresentations was likewise a question for the determination of the jury. In our subsequent opinion in 68 Neb. 71, we held that one of the issues of fact in this case is whether it was the duty of the defendant to protect the plaintiff from the defects in question, or whether that duty devolved upon plaintiff, and that it was error under the evidence to instruct as a matter of law that this duty devolved upon the defendant, and because the eighth paragraph of instructions declared

as a matter of law that such duty devolved upon the defendant, the instruction was condemned and a new trial ordered, which was tantamount to saying that such question should have been submitted to the jury, under a proper instruction.

It is urged strongly by counsel for the electric light company that in any view the former decision of this court in holding that the question of defendant's negligence, in not insulating the untaped splices, was one of fact to be determined by the jury, was erroneous, because the evidence establishes by a clear preponderance that the duty of discovering and insulating these splices devolved upon plaintiff, and not upon defendant under plaintiff's contract of service. We have made a further examination of the evidence contained in the present record without regard to our former holdings, and are fully satisfied from such investigation that the testimony is fairly conflicting on this question. According to plaintiff's theory, supported by his own testimony and that of other linemen who testified in his behalf, it is only the duty of a lineman to look for and repair defective wires when directed to do so. While it is conceded by plaintiff that when directed to insulate and repair defective wires it is his duty to do so, yet he contends that it is only his duty when doing construction work to protect himself against obvious dangers. He concedes that if he had been sent to look for these uninsulated splices he would have been able to have discovered them, but that having been directed to ascend the pole for the purpose of stringing wires on the top thereof, his duty was to obey this order and climb as it was necessary to do to the first cross-arm and ascend from there on the cross-arms with care and caution between the double row of wires which fenced him in on either side until he reached the top of the pole; that when he reached the top of the pole and fixed the wire, which he was stringing, in its proper place, it was necessary to descend on the west side of the cross-arms; that he looked down before beginning his descent to see that the way was

clear, but discovered no obstacle, and was carefully descending when his arm and back at the same time came in contact with the splices and formed a circuit which caused the injury. That during about twenty years experience as a lineman he had never before known of untaped splices being left on the wires. His testimony is supported by that of other witnesses experienced as linemen. It is not claimed that there was any contract between plaintiff and defendant specifically prescribing the risks he should assume or the work that he should do; he merely applied to one of the company's foremen for a job as a lineman, stating the experience he had had and that he was a member of the union, and on this statement he was offered work at $2.50 a day as lineman and entered defendant's service under this and no other contract. He had never before worked on the line at the place of his injury and was not directed to make repairs when he ascended the pole. Now, on the question as to the danger being obvious, there was likewise some conflict in the testimony which in our view on this issue clearly preponderated in favor of plaintiff's contention. In the first place, the untaped splices were in a network of wires and projecting only an inch; and were so colored by age that at a casual glance it would have been difficult to have determined whether the splices were taped or untaped. Also in descending the pole plaintiff had his face turned toward the pole and had to watch with care both for his footing and his handholds in making the descent. One of these splices came in contact with his back and the other with his arm which he had placed under a wire to take hold of the cross-arm. Under these circumstances, and in view of the fact that more than a year after the injury had occurred the company with all its employees had not yet discovered the existence of these untaped splices, although one of its linemen had ascended and descended the pole on which plaintiff was injured and strung a wire upon it a few minutes before plaintiff's injury, and its foreman had gone to the pole after plaintiff's injury and made an examination for the

purpose of discovering the untaped splices and failed to do so, consequently, we think, that there was not such an overwhelming weight of evidence in favor of the danger having been obvious as would justify us to overthrow the finding of two juries and two trial courts and our own former opinion upon this question.

Again the questions involved in this issue were submitted to the jury for special findings by request of counsel for the electric light company on the following interrogatories:

"3. Were the untaped splices on the wires between which Rombold started to descend the pole obvious and of such character as to be open to the usual view of a lineman in Rombold's situation on the pole? A. No."

"4. Did Rombold, when he was on the pole from which he fell, look at the wires to see whether he might safely pass between the wires strung on the pole? A. Yes."

"5. Could Rombold by looking to see whether there were any bare places or defective insulation on the wires between which he started to descend have avoided the electric shock which caused him to fall to the ground? A. No."

"6. Was it the duty of linemen in Rombold's situation to observe and repair or report to the foreman for repair defects in the insulation of the wires which rendered the condition of the wires unsafe for the linemen? A. No."

We are also strongly urged to reexamine the question of the sufficiency of the evidence to impeach the receipt signed by plaintiff in settlement of his injuries. The evidence on this question is practically the same as that examined by us in our first opinion, but waiving this for the sake of the conclusions to be reached, we have reexamined the testimony on this issue. According to plaintiff's testimony, on two occasions shortly before the paper was signed, superintendent White had conversed with him and told him that the company had insurance on its employees; that under their contract with the insurance company this company would pay for hospital expenses

and medical attendance of those injured in the service, whether there was any liability for the injury or not, and that he (White) promised plaintiff that he would aid him in getting as liberal an allowance as possible for his medical and hospital expenses, and that as soon as he (Rombold) had recovered the electric company would give him $500 in addition to this and restore him to work at a good salary again. With reference to this representation plaintiff is corroborated by the testimony of Mrs. Kopp. He further says that on the day the receipt was signed he had returned from the hospital where he had gone for further treatment of the leg subsequently amputated, and received a message from Mr. White to come to his office and meet Gilbert, the superintendent of the assurance company. That when he came he was suffering intense pain from his limb and his head was aching and he was suffering generally from an impending attack of typhoid fever; that when Gilbert read the paper as though it was a receipt from the assurance company for his hospital expenses and medical attendance, he signed it in duplicate without reading or further investigating it, because he relied on the representations of White and because he was not in a fit physical and mental condition to enter into a contract. That after he had signed the receipt he returned home, went to his bed and was taken down with a violent attack of typhoid fever from which he suffered for six or seven weeks before recovering. The allegation with reference to Rombold's physical condition was strongly corroborated by other testimony introduced in his behalf. In defendant's original answer it had alleged in pleading this receipt "that it had paid plaintiff the sum of $325 (claimed by him for loss of time and expenses incurred in the treatment of his injuries) and received from him, the plaintiff, a release in writing which is in the words and figures as follows:" (Here follows a copy of the release before set out.) This allegation was subsequently stricken from the answer by leave of court and was not incorporated in the amended answer. Plain-

tiff at the last trial was permitted, over the objection of defendant, to introduce this allegation from its first answer. The action of the trial court in permitting this is urged as error. We think, however, the rule is well established that an admission made in a pleading by either plaintiff or defendant may be proved by the pleading itself, although the pleading is subsequently discarded and an amended pleading filed. We therefore conclude that there was sufficient evidence that the signature to the receipt was obtained by fraud and mistake to raise a question of fact for the determination of the jury.

It is also urged that the trial court erred in admitting evidence as to the conversation with superintendent White preceding the signing of the receipt. This contention, however, is not well founded, as it is a universal rule that when fraud is alleged a broad and liberal latitude should be given the party alleging it in establishing every fact and circumstance connected with its alleged perpetration. The mental and physical condition of the party, all representations and inducements held out to him by the adverse party, should be carefully examined into, and all testimony directly connected with the transaction should be admitted. While it is the general rule that the signing of an agreement by one who can read and write without reading it, is ordinarily such a negligent act on the part of the one so bound as to deny him relief from the written contract, *Osborne v. Missouri P. R. Co.*, 71 Neb. 180, this rule has many exceptions, especially when the contest is between the original parties to the agreement and the signature is alleged to have been procured by fraud or deception. These exceptions are fully recognized in the case just cited, and the question involved in the instant case is referred to in this opinion in the following language:

"In the very recent case of *New Omaha Thomson-Houston Electric Light Co. v. Rombold*, 68 Neb. 54, the plaintiff was permitted to be relieved from his signature to a release similar in substance to that pleaded in the suit at

bar, by a clear preponderance of the evidence that the receipt had been misread to him when his signature was obtained. While the judgment first rendered in this case was reversed on a rehearing on January 6, 1904, this portion of the opinion was not reversed, and is still of judicial weight in the determination of this question. But in this case, the agent of defendant purported to read the written instrument to the plaintiff, and procured his signature by deception in misreading the contents of the paper signed."

The instructions given by the trial court are assailed generally in the brief of the electric light company. The instructions on the alleged fraud perpetrated on plaintiff in procuring his signature to the release are identical with the one commented upon with favor in our first opinion, and need no further review. The other instructions covered carefully every defense interposed, and tell the jury again and again that if they believe from the evidence either that plaintiff had assumed the risk as an incident of his employment, or that the defect was open and obvious, in either instance they should find for the defendant, and in no instruction given was plaintiff permitted to recover if he had voluntarily signed the receipt without any deceit or fraud having been practiced upon him, or if it was his duty to inspect the wires for defects at the time of the injury or if the defect was open and obvious. They further tell the jury to not allow plaintiff, if permitted to recover, anything for medical services and hospital expenses. We think the instructions models of clearness and precision, which clearly covered every question involved in the controversy. Finding no reversible error in the record, it is therefore recommended that the judgment of the district court be affirmed.

AMES and LETTON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on motion for rehearing was filed December 20, 1905. *Rehearing denied:*

1. **Injury to Employee**: QUESTION FOR JURY. Whether it was the duty of the defendant due to the plaintiff to insulate the wires described and complained of in the petition, or whether because of the nature of the work, the contract of employment, or other facts and circumstances, the duty to make inspection and discover defects devolved upon the plaintiff, are, under the issues and the evidence, *held* to be questions properly submitted to the jury for its determination.

2. **Obvious Defects**. An open and obvious defect is one which is manifest to the sense of observation, open and readily discernible, whether it arises from the nature of the business, the particular manner in which it is conducted, or the use of defective and unsafe appliances.

2*a*. ————: QUESTION FOR JURY. Whether the defect complained of is open and obvious is *held* to be a question of fact for the jury.

3. ————: ————. Applying the rule of the law of the case it is *held*, "that whether or not due care on the lineman's part required that he see and avoid contact with the exposed splices was properly left to the jury."

HOLCOMB, C. J.

This cause is now pending on its second appearance in this court. The error proceedings first taken to have reviewed the record and judgment obtained in the court below resulted in a reversal of the judgment and a remanding of the cause for further proceeding. *New Omaha Thomson-Houston Electric Light Co. v. Rombold,* 68 Neb. 54, 68 Neb. 71. The plaintiff on the second trial in the court below again obtained judgment, and defendant brings error. In an opinion prepared by the commissioners, which was adopted by the court, it was found that no prejudicial error had been committed and the judgment last obtained was accordingly affirmed. *New Omaha Thomson-Houston Electric Light Co. v. Rombold, ante,* p. 259. An application for a rehearing has been made and it is complained that the rule of the "law of the case"

was erroneously applied in the last opinion, thereby leaving unconsidered and undetermined vital questions presented by the issues and the evidence at the last trial. The plaintiff, a lineman in the employment of the defendant electric light company, received personal injuries while at work in the performance of his duties, and his cause of action for damages is grounded on the alleged negligence of the defendant in permitting and causing to exist on its main lines of wires two short pieces or splices of wire projecting therefrom, untaped and uninsulated, and that while engaged in his work he came in electrical contact with the exposed ends of said wires, receiving a shock which caused him to fall to the ground and to receive the injuries complained of. These splices of wire had been left in the condition they were in when the injury occurred by removing or detaching service wires used to carry electrical currents for electrical lighting or power purposes from the main or feed wires to the structures occupied by the customers of the defendant company.

One of the principal defenses of the company was and is that it owed no duty to the plaintiff in respect of the alleged negligent construction and defective condition of its wires which produced the injury, since the character and nature of the plaintiff's employment required of him the duty of inspecting the wires of its lines where he was working and of discovering defects and repairing the same or reporting such defects to the company in order that the same might by it be properly repaired and the defect cured.

As bearing on the issue of the alleged negligence of the company and its duty toward its employees in that regard, the trial court at the first hearing instructed the jury, in substance, that it was the defendant's duty to exercise ordinary and reasonable care to render it safe for the plaintiff to work on its poles and among its wires strung thereon. That if such degree of care and caution required such wires to be insulated, then it was negligence to permit such wires or parts of them to be without proper insula-

tion and thereby subject its linemen to risk of injury. It is, in the opinion last filed on the first appeal, said that it is the undoubted general rule of law that the employer is bound to exercise reasonable care not to expose his employees to unreasonable or extraordinary danger by putting them to work in dangerous places or with dangerous tools and appliances. It is held, however, therein, under the issues in the case at bar as to negligence, that where from the nature of the work, the contract of employment, or other facts and circumstances, the duty to make inspection and discover defects devolves upon the employee, the employer is not liable for an injury resulting to such employee from a defect which the latter, by reasonable inspection, would have discovered. To the charge of negligence at the first trial the defendant answered by a general denial, thus putting in issue not only the alleged defective condition of its electric light wires, but also its alleged duty to the plaintiff to properly tape the exposed wires and thus prevent the risk of danger to which the plaintiff was exposed. As to the alleged omission of duty on the part of the defendant to keep and maintain its wires in a reasonably safe condition, the decision unmistakably establishes the proposition that that question was one of fact which, under the pleadings and the evidence as they then stood, should have been submitted to the jury for its determination. On the retrial the answer was changed so that it was specifically denied "that it was the duty of this defendant, due to plaintiff, to insulate the wires described and complained of in the petition," thereby narrowing the issue regarding the duty owing by the employer to the employee in respect of the uninsulated wires, and bringing the issue squarely within the rule announced in the opinion. The defective condition of the wires was conceded.

1. It is now contended that the undisputed evidence discloses that the defendant did not owe to the plaintiff the duty of inspecting the wires and repairing the defects complained of in order that the plaintiff might have a

safe place to work at the place and under the circum-
stances where the accident occurred, and that the opinion
last filed is erroneous in holding that the evidence was
conflicting regarding the defendant's duty in that regard.
If there exists a substantial conflict in the evidence as to
the nature of the work, the contract of employment and
other facts and circumstances connected with the plain-
tiff's employment, as we think does, then, under the de-
cision on the first appeal, any course other than to have
submitted such question to the jury for its determination
would have been error to the prejudice of the party against
whom the ruling operated.

If the evidence relating to corresponding duties and
obligations of the respective parties concerning the de-
fective condition of the wires is in the last trial sub-
stantially the same as on the first, as we think it is, then
the propriety of the submission of the question to the jury
for its determination as to on whom the duty rested, is
foreclosed by the rule of the law of the case.

It is contended that there is no averment in the pleading
of the plaintiff that the defendant had actual knowledge
of the defect complained of, and that there would be no
cause of action unless the defendant might by reasonable
inspection have obtained such knowledge. The facts out
of which the alleged negligence arises do not, as it occurs
to us, bring the case within the rule nor the reason of
the rule invoked by the defendant. If the defect existed
as complained of, it was occasioned by the active agency
of the master in the construction and operation of its
electrical lighting and power system. It resulted from
the negligent acts of its agents and servants in stringing
its wires to be used in the prosecution of its business.
There would be no difference in principle had its wires,
poles or fastenings been defectively arranged or con-
structed in the original construction of the plant and re-
garding which the master would be chargeable with notice.
It would, by the application of like principles, be charge-
able with notice of the defective character of the work-

manship characterizing the method adopted in attaching
and detaching service wires to and from the main or feed
wires. It is not a defect occasioned by accident, nor grow-
ing out of the ordinary use and wear of the system, nor
yet because of some inherent defect in the materials and
appliances obtained for use by the master, and regarding
which he is required to exercise such care as the circum-
stances reasonably demand, to see that the material and
appliances so furnished are reasonably safe for use and
to thereafter maintain them in such reasonably safe con-
dition. The defect complained of grew out of additions
to, and alterations of the system and in the making of
which the master is required to exercise reasonable care
to the end that its employees be not exposed to unneces-
sary danger while working in and about the property
in the prosecution of the master's business. "It is well
settled that a master who, himself, manufactures and sup-
plies an instrumentality is chargeable with such knowledge
of its defects as ordinary care during such manufacture
would have disclosed. Manifestly, the responsibility
which is thus assumed to come into existence continues
as long as the defects remain unremedied, irrespective of
whether the instrumentality was or was not properly in-
spected after being put into use." 1 Labatt, Master and
Servant, sec. 152. It is argued that even if the testimony
tended to show that it was the duty of the plaintiff to
look for defects only when told to do so or when engaged
in inspection work with a view to the discovery and rem-
edying of defects as distinguished from the ordinary
work of a lineman, it would not tend to show that the de-
fendant owed the duty to the plaintiff alleged in the peti-
tion, because if it were true that plaintiff's contract did
not require him to look for defects in the wires unless
specifically told to do so it would not necessarily follow
that the law imposed on the defendant the general duty of
a master to provide a safe place for his servant. It is,
we think, settled by law of the case that the employer
did owe to its employee the duty imposed by the law gen-

erally to provide the employee a safe working place unless the employer had been relieved of that duty by reason of the employee's contract of employment, the nature of the work to be performed and other facts and circumstances. In other words, the rule of the law of the case now to be applied is that unless the plaintiff by reason of the character of his employment has assumed the duty of making inspection for the discovery of defects of the nature and kind complained of and repairing the same or reporting them in order that they may be repaired, then the duty which the law says rests generally on the master to provide a safe working place for the servant rests upon the defendant in the case at bar, and the failure to discharge such duty where damage resulted therefrom would constitute actionable negligence. Whether the plaintiff had in fact by reason of his employment and the nature and character of the same and other facts and circumstances assumed the duty of making his own inspection to discover defects of the kind complained of and therefore relieved the master of the duty ordinarily resting on him and which would have continued to exist except as the servant may have waived it, became of vital importance to both parties. The evidence relating to this question is of such a character as to require its submission to the jury and its finding must be regarded as conclusive.

2. It is argued that the opinion handed down on the second appeal is erroneous in holding that there was a conflict of testimony relating to the question whether the defects complained of were open and obvious, the contention being that they were according to the undisputed evidence and that therefore the risk was assumed by the plaintiff.

There is no serious dispute or conflict in the testimony as to the nature and character of the defects relied on as constituting negligence. The alleged negligence was with reference to the untaped splices of wire left on the main wires where the service wires were detached therefrom. The facts and circumstances as to the size and length of

these pieces of wire, how left untaped or uninsulated, where attached to the main wires, the number and relative position of the main wires, the position of the untaped splices in relation to the pole and cross-arms on which the plaintiff was working, and the other related facts and circumstances were established by the evidence without substantial conflict or controversy. The question of importance in respect of the matter is what is the proper deduction to be drawn from the established facts, and whether the question is one to be ruled on as a matter of law or whether it is the province of the jury to say whether the defects were open and obvious within the meaning of the law. We incline to the view that the question was properly submitted to the jury and that its conclusion determines the matter. As tending to support the view that the defects were open and obvious, it may be said that the untaped splices extended about one inch from the main wires and were located about two feet from the cross-arms on the pole where the defendant was working and which he ascended and descended when performing the service he was engaged in; that in going up to the top of the pole these points were at one time on a level with his eyes and on the far side of the pole he was ascending. Had he noticed them, he must as an experienced lineman have appreciated the danger. The splices were on the main wires attached to the second cross-arm from the top, and within four or five feet of the plaintiff's face while he was at the top of the pole, and while engaged in the construction work he was sent to do. On the other hand, it may be said that he did not in fact see or discover these defects; that there were six or eight wires, one above the other, not in perfect alignment, making the apparent width of the obstructed vision when looking up or down of about one and one-half or two inches. The exposed untaped wires were discolored from age, giving them somewhat the same appearance as the insulated wires. In ascending and descending the pole, plaintiff's attention was mainly directed to the cross-

poles and wires on and between which he was climbing and his view of the defects frequently cut off by these obstructions. That before descending he looked down between the wires to see that the way was clear and in descending he had his face turned toward the cross-arms and was required to watch where he placed both his hands and his feet. It also appears that defects of the kind in question were unusual and that the plaintiff had never before in his experience observed any of that kind. With these facts before us, should it be said that the plaintiff assumed as a matter of law the risk as an open and obvious one? The defendant's view of the matter is probably best expressed in a requested instruction, which was refused, to the effect that "open and obvious defects in the sense of these instructions are those which could have been seen by the plaintiff while on the pole by the mere exercise of his sense of sight, and the danger of which would when seen be understood by him." This test does not seem to us to be correct. Of course the defect could only have been seen by the exercise of his sense of sight. It is also true that they might have been seen by the exercise of the sense of sight had attention been directed to them. But because they possibly might have been seen by the mere exercise of the sense of sight can it be said for that reason alone that they were open and obvious defects? In defining what was meant by the assumption by an employee of open and obvious dangers in connection with his employment, one court has said: "Risks which are incident to the business must not be confounded with such as are denominated 'obvious.' The former sort comprises those which accompany or arise from the natural or usual method of conducting the particular business, and has more special relation to perils which attend the business generally, while the latter include such as are manifest to the sense of observation, open and readily discernible, whether they arise from the nature of the business, the particular manner in which it is conducted, or the use of defective or unsafe appliances." *Slager v. Troy Laundry*

*Co.,* 38 Ore. 480, 53 L. R. A. 459. If the risk is assumed on the ground that it is open and obvious it must be shown either that the employee had actual knowledge of the defect or that it was so plainly observable that he may be presumed to have had actual knowledge of it. The plaintiff had no actual knowledge of the defects complained of. Were they so open and readily discernible, so obvious as that knowledge of them will be imputed to him as a matter of law? Whether or not he knew or should have known of the defects under the circumstances shown in evidence is a matter regarding which reasonable minds might very readily draw different conclusions, and for that reason the question was properly submitted to the jury as one of fact for its determination.

3. The contention now made that the undisputed evidence establishes contributory negligence cannot be sustained. The rule of the law of the case has settled the contention to the contrary. When the case was first here for consideration on facts substantially the same, it was in express terms held: "That whether or not due care on the lineman's part required that he see and avoid contact with the exposed splices was properly left to the jury." Treated as an original proposition, we are satisfied this question was rightly left to the jury. Whether or not, under the circumstances, the plaintiff exercised due care and caution in the performance of his work at the time he received the injury complained of was a question peculiarly within the province of the jury. The facts and circumstances have been heretofore briefly stated. What has been said regarding the danger being open and obvious in a measure applies here. Because the plaintiff might have discovered the defects by the exercise of greater vigilance than then displayed or of extraordinary care and caution does not for either reason establish contributory negligence as a matter of law. He was not required to be on the alert and search for defects the existence of which he had no reasonable ground to suspect. Of course, he knew danger lurked in the wires among which he was

State v. Mickey.

working, and with which he was likely to come in contact in the prosecution of his business, and as an experienced lineman it was his duty to exercise all reasonable care and caution in respect thereto; but the danger resulting in the injury was not one ordinarily incident to the business, and the risk of which he assumed when he engaged in the employment, unless it was open and obvious. Negligence on his part, which would defeat a recovery, would be the failure to observe that degree of care and caution which an ordinarily prudent man of like knowledge and experience would have exercised under similar circumstances. It can hardly be said that the evidence relating to the question is open to but one reasonable construction, and that against the plaintiff.

4. The alleged errors in the rulings of the trial court with reference to the instructions given to the jury and the purported release relied upon as a defense to the plaintiff's demand have, we think, been sufficiently and satisfactorily considered in the opinion heretofore filed, and will not be at this time further discussed.

The judgment of affirmance is adhered to, and the motion for a rehearing denied.

REHEARING DENIED.