HARRY SHELTON, Administrator of the Estate of JOHN SHELTON, Deceased, Appellant, v. KIRKSVILLE LIGHT, POWER & ICE COMPANY.

**Division Two, May 26, 1914.**

1. **NEGLIGENCE: Electric Wires: Duty of Company.** The degree of care required of electric lighting companies and the extent of risk assumed by the linemen are to be measured and determined in each case by the terms of the employment, the rules of the company as to the duties of linemen, or the custom of the company as to inspection of poles, wires, etc., or other special circumstances affecting the duties and obligations of one or both parties.

2. ————: ————: **Defective Insulation.** Where an experienced lineman for a light company is furnished tape for replacing insulation and it is part of his duty required by the company to make such repairs in his daily labors, he assumes the risk of injury resulting from defective or decayed insulation on wires already strung, with which he comes in contact while stringing new wires on the same poles.

Appeal from Knox Circuit Court.—*Hon. Charles D. Stewart,* Judge.

AFFIRMED.

*L. F. Cottey, J. A. Cooley* and *Weatherby & Frank* for appellant.

Instruction 3 for defendant is erroneous in assuming as matter of law that it was the duty of deceased to discover and repair or report all defects in the defendant's wires. It not only assumes as true what should have been left to the jury to find from the evidence, but it wholly ignores the master's duty in the premises to use the highest degree of care, and casts the master's duty on deceased, and further ignores the conflicting evidence as to just what were

the duties of deceased. At the time he was killed deceased was not engaged in inspecting or repairing wires or reporting defects, nor had he been sent to make a dangerous place safe. He was sent up the pole by the superintendent to string a new wire under the immediate direction of the superintendent. Klein v. Transit Co., 117 Mo. App. 691; Browning v. Railroad, 118 Mo. App. 449; Bond v. Railroad, 122 Mo. App. 207; Geismann v. Electric Co., 173 Mo. 654; Von Trebra v. Gaslight Co., 209 Mo. 648.

*Campbell & Ellison, F. H. McCullough* and *Higbee & Mills* for respondent.

(1) Deceased was the defendant's lineman; he was inspector and repair-man. All the hazards of his employment were known to the deceased. The condition of the wires was open and visible to him, and the risks incident to the service were known to, and assumed by him. It was his duty to discover and repair defects. Defendant was not bound to send another man up to inspect the wires at the top of the poles before sending the deceased up to string the wires. Epperson v. Cable Co., 155 Mo. 346; Livengood v. Lead Co., 179 Mo. 229; Bradley v. Tea & Coffee Co., 213 Mo. 325; Corby v. Telephone Co., 231 Mo. 437; Miller v. Tel. Co., 141 Mo. App. 469; Clothing Co. v. Pitts, 23 L. R. A. (N. S.) 1013. (2) When the deceased was at the top of the pole he was supreme. He was his own boss, and not under the charge of, nor subject to the control of his employers. The superintendent, for all practical purposes "might as well have been in China as at the foot of the pole." Shelton could see the condition of the wires better than anyone else. Rutledge v. Swinney, 170 Mo. App. 251; Booth v. Railroad, 217 Mo. 728. (3) Plaintiff's evidence shows that the death of deceased was caused by his own negligence—his negligent manner of doing the work.

The burden was upon the plaintiff to show that his death was caused by the defendant's negligence. A verdict for plaintiff would be based, not on the evidence, but on mere speculation and conjecture. Byerly v. Light, Power & Ice Co., 130 Mo. App: 603; Goransson v. Mfg. Co., 186 Mo. 307; Warren v. Railroad, 178 Mo. 134

ROY, C.—This is a suit for $10,000 damages by reason of the death of John Shelton. There was a verdict and judgment for defendant and plaintiff appealed.

The deceased was an experienced lineman in the employ of defendant and was, at the time of his death, engaged in stringing a new wire on a pole of defendant

Negligence:
Electric
Wiring:
Lineman.

on which were five cross-arms and many wires carrying a deadly current of 2300 volts. He came in contact with those wires and was instantly killed. The petition alleged negligence in permitting the insulation on those wires to become and remain defective, decayed and insufficient. The answer pleaded contributory negligence, and alleged that the deceased was an experienced lineman and knew and assumed the risks incident to the employment. It also alleged that it was the duty of the deceased to inspect and keep in repair the wires at the point where he came in contact with them. The reply was a general denial.

Mr. J. W. Moore, defendant's superintendent, called by plaintiff, was put on the stand and testified as to the circumstances of the death. On cross-examination he testified: "There was nothing I knew of concealed or hidden from Mr. Shelton. Everything was visible. He could have told to a certainty whether or not there was insulation on the wires. He knew as to the primary and secondary wires. Knew their voltage. He was provided with tools; we are supposed to furnish the men with tools in doing their work.

They are furnished tape; black tape used for wrapping wires. It's insulating tape. It is used on joints that are bare and such places as that.    If Mr. Shelton would have discovered a bare joint on one of the wires when he went up the pole, or on more than one of the wires, it would have been good practice to have repaired it, fixed it. I know of him using tape on joints before somewhere on the line. I directed him to look after these places along the line. That was one of the things that was his business to look after. As superintendent I got information as to the condition of the wires, reported to me by people, employees, and what I saw and what people would telephone to me. The linemen would look after defects and report them to me; that was a part of their business.''

The testimony for plaintiff also showed that the insulation was off the wires in places at or near the pole and cross-arms.

At the close of plaintiff's evidence, and again at the close of all the evidence, the defendant asked an instruction in the nature of a demurrer to the evidence, which was refused. The cause was submitted on instructions for both sides, and there was a verdict for the defendant.

I. The demurrer to the plaintiff's evidence should have been sustained.

Joyce on Electric Law, vol. 2, sec. 657, says: ''The degree of care required of the company and the extent of risk assumed by the lineman are to be measured and determined in each case by the terms of the employment, the rules of the company as to the duties of linemen, or the custom of the company as to inspection of poles, or other special circumstances affecting the duties and obligations of one or both parties.''

That rule is indorsed by the following authorities: McGuire v. Bell Telephone Co., 167 N. Y. 208; Mc-Gorty v. S. N. E. Telephone Co., 69 Conn. 635; Cum.

Telephone Co. v. Loomis, 87 Tenn. 504; Britton v. Central U. T. Co., 65 C. C. A. 598; Barto v. Iowa Tel. Co., 126 Iowa, 241; Krimmel v. Edison Il. Co., 130 Mich. 613; New Omaha T. E. L. Co. v. Rombold, 73 Neb. 259; Consol. Gas. Co. v. Chambers, 112 Md. 324. So far as we can find no case holds the contrary. There is no case in this State squarely in point except Rutledge v. Swinney, 170 Mo. App. 251, which supports the rule above stated.

In Roberts v. Telephone Co., 166 Mo. 370, the lineman was engaged in the work of inspecting and repairing at the time of the injury and it was held to be his duty to inspect for the defect which caused the injury. In this case the deceased was not engaged in the work of inspection and repair; but under the above rule and the conceded facts in this case, he was bound to inspect for his own safety. He was required by the direction and rules and custom of the company to make such inspection. In Corby v. Telephone Co., 231 Mo. 417, the foreman was at the foot of the pole as the superintendent was in this case. But the injury in that case was by reason of a defective pole which it was the duty of the foreman to inspect. In this case the defect was not in the pole, but in the insulation of the wires. Their inspection fell upon the lineman. He was in a better position to inspect than was the superintendent. His own witness testified that the company required him to make such inspection, that it was a part of his business, and that he was furnished with tape to repair the insulation.

Appellant says that the duty to furnish a safe place in which the servant may work is an absolute, non-delegable one, and that the duty of inspection cannot be thrown on the servant. That rule may be conceded; but, like most general rules, it has its exceptions. Those exceptions are based on the special circumstances which do away with the reason of the general rule. In Knorpp v. Wagner, 195 Mo. l. c. 663,

it was held that a drill man in a mine could be required to inspect his own drill holes for his own preservation, citing Livengood v. Lead & Zinc Co., 179 Mo. 229; Fisher v. Lead Co., 156 Mo. 479.

In Modlagl v. Iron & Foundry Co., 248 Mo. 587, it was held that a blacksmith was bound to repair his own tools. WOODSON, J., said: ''In the case at bar, the repair of the tools of the shop was simple and could be readily and easily made by any blacksmith. In fact, I never knew or never before heard of one blacksmith repairing these simple tools for another. What would be the sense in taking a broken or damaged tool from one blacksmith shop to another to have it repaired, or hand it to another smith in the same shop for that purpose, when both are engaged in precisely the same work, both for the master personally and for the master's patrons. To hold in the case at bar, that the battered chisel, mentioned in the evidence, should have been taken to another shop or handed to another, Schuler, plaintiff's fellow-servant in the same shop, for repairs, would not amount to respectable nonsense, yet if we follow the contention of counsel for plaintiff to its logical conclusion, that would be the inevitable result, or we would be forced to hold the defendant is liable in this case for having failed to do that non-sensical thing.''

That is language similar to that used in Consol. Gas Co. v. Chambers, 112 Md. 1. c. 334, supra, where it was said: ''Many other cases might be cited, but those above are sufficient to show the trend of the decisions, and others can be found referred to in the note and cases we have mentioned. While the facts necessarily differ in them, the general rule to be deduced from them may be thus stated; when the employer has no independent system of inspection of poles, cross-arms, steps, etc., and the lineman has no reason to believe that such inspection is made, he had no right to rely on the employer for such inspection,

but must make such tests himself as may be neces-
sary to ascertain whether it is safe to go upon them,
and cannot hold the employer responsible for injuries
received by him by such poles, cross-arms, or steps
giving away, unless there was some defect in  them
when they were originally placed in position, or the
employer had some knowledge of the defect, which
was not communicated to the lineman—provided, of
course, the lineman is not such an inexperienced per-
son as is entitled to be instructed as to the danger.  Of
course, there may be some exceptions to such a gen-
eral rule, but we find nothing in this record that
would take the case out of it.  There is more reason
to apply such a rule to cross-arms than to poles, for
there are usually so many more of them, and, as said in
Flood's Case, 131 N. Y. 603, inspectors 'were not ex-
pected to climb up every pole and examine the arms
thereon.  Such an inspection would be manifestly im-
practicable and unnecessary.'  Indeed it is far safer
for the linemen themselves to make the inspection and
such tests as may be necessary for their safety, as
they would do so at the very time they went upon them,
while in many instances that would be impossible if
separate inspectors were relied on."

In Britton v. Central E. Telephone Co., 65 C. C. A.
598, Judge (now Justice) LURTON said, "The case
might be altogether different if skill of a kind not
presumably required from a lineman in the usual course
of his calling was necessary to apply the tests reasona-
bly sufficient in such cases."

In Krimmel v. Edison Il. Co., 130 Mich. 613, it
was said:  "The rule as to the duty of the employer
is well settled, but the trouble comes in the applica-
tion of the rule in a given case.  In none of the cases
cited by counsel was it shown, as in this case, that
it was the custom of the company to have the inspec-
tion made by the person injured, before he entered

State ex rel. v. Roach.

upon his work, and that it was a part of his duties to make the inspection.''

We therefore hold that the rule is as stated by Joyce, that the duty to inspect for his own safety may be imposed upon the lineman by the terms of his employment or by the custom or rules of the company.

As defendant's demurrer to the evidence should have been sustained, it is needless to discuss questions as to alleged error in the other instructions. The verdict was for the right party and should be upheld. [Bradley v. Tea & Coffee Co., 213 Mo. 320.]

. The judgment is affirmed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.