GEORGE KELLY V. STATE OF NEBRASKA.

FILED MAY 18, 1897.   No. 9002.

1. **Rejection of Cumulative Testimony: REVIEW.** The action of the trial court in excluding testimony merely cumulative, *held* not prejudicial, if erroneous.

2. **Criminal Law: WITNESSES: REBUTTAL.** A witness whose name was not indorsed on the information may be called on rebuttal and give testimony which is obviously and purely rebuttal, or on a subject first brought into the case in the evidence of the defense and which is in rebuttal of and made necessary by such evidence introduced by the defense, but may not give testimony which is not directly and plainly rebuttal or which tends to prove the commission of the crime and might properly have been introduced on the part of the state as of its evidence in chief.

3. ——: **LARCENY: INSTRUCTIONS.** The action of the trial court in refusing to give certain instructions examined and approved.

ERROR to the district court for Burt county. Tried below before POWELL, J. *Reversed,*

*H. E. Carter*, for plaintiff in error.

*C. J. Smyth, Attorney General*, and *Ed P Smith, Deputy Attorney General*, for the state.

HARRISON, J.

The plaintiff in error was prosecuted in the district court of Burt county, under the provisions of chapter 77 of the Session Laws enacted during the session of the legislature of 1895, for the alleged crime of stealing one steer of the value of $20, the property of one Henry C. Sawtell, was convicted, and sentenced to confinement in the penitentiary. The case has been removed to this court for review of the proceedings of the trial court.

The first assignment of error to which our attention is directed by the brief of counsel is that the trial court excluded certain of the evidence which it was sought to elicit from Ed Taylor, when he appeared as a witness on the part of plaintiff in error. The steer the plaintiff in error was charged with stealing was sold by him in Blencoe, Iowa, September 29, 1895, and the testimony which was excluded was of the fact that the witness had been requested by the plaintiff in error to go to the wagon in which the steer had been hauled to Blencoe, and in which it was then standing, to look at it with a view to its purchase, the object of the evidence being to show that the plaintiff in error was openly offering the animal for sale in the market and observing no secrecy in regard to it. The main fact had been proved by other witnesses and was not disputed; hence the rights of plaintiff in error were not prejudiced by the exclusion of the testimony, and there was no available error.

During the progress of the trial it became material to determine the identity of the steer. Whether the one sold by plaintiff in error at Blencoe was the one which had been missed from the herd of Mr. Sawtell was made a material issue, and on this subject there was testimony that the one which Sawtell claimed had been stolen was

branded, but the brand had become or was so dim as to be scarcely discernible. Sawtell testified that the animal had been branded immediately "behind its left shoulder;" that the brand was a straight bar two or three inches in length, and in answer to the question as to how plainly it was to be seen, that (quoting his words) "It was a very light brand. Unless I should have known that there should have been a brand there I would not have supposed there was one there;" and further, that he knew it was there, "because our cattle were all branded when we bought them." On the part of the defense it was shown that there existed no mark or brand on the animal which was sold by the accused at Blencoe. Among the witnesses who stated this last to be true were the two men who slaughtered the steer at Blencoe, and who further testified that they examined to ascertain as to the existence or nonexistence of a brand on the animal at the time it was killed and dressed by them. On rebuttal there was called a witness, whose name was not indorsed on the information, who testified in regard to branding animals, and that where the branding iron touches the animal lightly, and does not burn the flesh, it makes a mark which is known as a "hair brand," which may disappear, or almost so, in a short time. The counsel for the accused objected to this witness testifying, on the grounds that the testimony was not proper rebuttal, and that the name of the witness had not been indorsed on the information. Where it becomes necessary to call persons to testify in rebuttal of testimony introduced on behalf of an accused in his defense, or if it is rendered necessary by a material issue raised for the first time in the case by the evidence for the defense, and the evidence sought to be introduced on rebuttal is obviously and purely rebuttal in its nature, it may be given by witnesses whose names were not indorsed on the information. (*Goldsby r. United States*, 16 Sup. Ct. Rep., 216; *State v. Parish*, 22 Ia., 284; *State v. Ruthven*, 58 Ia., 121; *State v. Huckins*, 23 Neb., 309; *Fager v. State*, 49 Neb., 439.) Where, as

in this case, the testimony thus introduced is not directly and plainly rebuttal in its character, but is in support of the main case, and would have been proper testimony in chief for the state on a material question first brought into the case for and by the state, and not rendered necessary by an issue first tendered by the accused in his defense, it is error to allow the witness to testify over the proper objections such as were here interposed; and this is true although the testimony may rebut some of that introduced for the defense. (See *People v. Quick,* 25 N. W. Rep. [Mich.], 302, wherein it is observed: "In the present case, however, the witnesses who were received as rebutting witnesses were not such. They were called to prove what belonged to the people's case in chief. Cases may sometimes arise where testimony which could not be had in the opening may be let in upon good cause shown thereafter. But it is not proper to divide up the testimony on which the people propose to rest their case, and nothing which tends to prove the commission of the crime itself, or its immediate surroundings, can be classed as rebutting evidence under ordinary circumstances, if at all.")

It is urged that the court erred in refusing to give in its charge to the jury instructions numbered 5, 6, 9, and 10 of those prepared and requested for the accused. Of these, 5, 9, and 10 were in relation to the steer having been an estray, and to inform the jury that if it came into the possession of the accused as an estray, his subsequent conversion of it to his own use would not be larceny unless he had the intent so to do when he first took possession of it. Whether these instructions properly expressed a rule of law we need not now discuss or decide. While there was testimony to show that the animal alleged to have been stolen escaped from the pasture and possession of its owner, and was not afterwards discovered or returned thereto, and also testimony which might have warranted an inference that it strayed into the pasture of the accused, there was no testimony that the ac-

cused ever saw it or knew it as an estray; indeed, the whole of the evidence on the part of the defense negatived any such idea or theory; hence the court did not err in its refusal to give instructions on the subject. By the instruction numbered 6, of the refusal to give which complaint is made, it was sought to present to the attention of the jury that if the accused, at the time he took the steer and sold it, believed it to belong to his father and sold it pursuant to directions in that regard given him by his father, he was not guilty as charged. There was testimony in the record which probably might have warranted the giving of an instruction on the subject, but the one proffered would have further informed the jury that unless the testimony showed beyond reasonable doubt that the accused knew at the time he took the steer that it was the property of Mr. Sawtell, who was alleged in the complaint to have been at the time its owner, the accused must be acquitted. This last would have been erroneous; hence the court did right in refusing to read the instruction in its charge to the jury.

There are further assignments of error, but of such a nature that we do not deem their discussion or decision essential at this time. The judgment of the district court must be reversed and the cause remanded.

REVERSED AND REMANDED.