## AUGUST KASTNER V. STATE OF NEBRASKA.

FILED JUNE 21, 1899.   No. 10634.

1. **Homicide:** DEGREES OF MURDER. In a prosecution under an in-
formation for murder in the first degree it is not reversible error
for the court to properly advise the jury respecting the distinc-
tion between the different degrees of murder.

2. ———: ———: MALICE: EVIDENCE. Where the fact of killing is
shown, and no extenuating or mitigating circumstance is proven,
malice is presumed, and the crime of murder in the second de-
gree is established.

3. **Criminal Law:** CIRCUMSTANTIAL EVIDENCE. The test for ascertain-
ing the sufficiency of circumstantial evidence is whether the
facts and circumstances tending to connect the accused with
the crime charged are of such a conclusive nature as to exclude,
to a moral certainty, every rational hypothesis except that of
his guilt. (*Morgan v. State*, 51 Neb. 672.)

4. ———: EVIDENCE. The state may introduce evidence to prove any
number of facts and circumstances tending to connect the ac-
cused with the crime, and if they are sufficient to establish his
guilt beyond a reasonable doubt, he is not entitled to an ac-
quittal because of the failure of proof with respect to one or
more of the facts relied upon for a conviction.

5. **Instructions:** NUMBERS. The failure of the trial court to number
consecutively the instructions is not reversible error if no ex-
ception was specifically taken on that point at the time the
charge was given to the jury.

6. ———: WITNESSES: DETECTIVES. Where police officers and de-
tectives testify for the state in a criminal prosecution, their
testimony should be weighed with greater care than that given
by disinterested witnesses, and the jury should be substantially
so instructed by the court in its charge.

7. ———: CRIMINAL LAW: EVIDENCE. In a criminal prosecution di-
rect and circumstantial evidence adduced on the trial should be
weighed in reaching a verdict, and it is not error in such case to
so instruct the jury.

8. ———: ———: REPETITIONS. Error cannot be predicated upon
the refusal of a request to charge, where an instruction, cov-
ering the same subject, as favorable to the complaining party,
has been given by the court on its own motion.

9. **Criminal Law:** WITNESSES: REBUTTING EVIDENCE. Strictly rebut-
ting testimony may be introduced by the state even though the

names of the witnesses giving such testimony are not indorsed on the information.

10. ——: ——: ——. The state may introduce rebutting evidence to meet any pertinent issue raised by the accused in making out his case.

11. ——: IMPROPER EVIDENCE. Evidence which does not tend to establish the guilt or innocence of the defendant of the crime charged should be excluded, even though its admission might afford the jury a remote "basis for a guess."

ERROR to the district court for Douglas county. Tried below before SLABAUGH, J. *Affirmed.*

See opinion for statement of the case.

*Albert S. Ritchie, James B. Kelkenney,* and *Thomas A. Donohoe,* for plaintiff in error:

The nineteenth instruction, relating to malice and to the different degrees of murder, was erroneous. (*Vollmer v. State,* 24 Neb. 838; *Erwin v. State,* 29 O. St. 186; *People v. Freel,* 48 Cal. 436; *Morgan v. State,* 16 Tex. App. 593.)

Instruction 24, relating to circumstantial evidence, was erroneous. (*Morgan v. State,* 51 Neb. 672.)

A portion of instruction 25 is erroneous because it singled out and weakened a portion of the testimony. (*Horn v. State,* 15 So. Rep. [Ala.] 278; *Miles v. State,* 19 S. E. Rep. [Ga.] 805; *State v. O'Grady,* 65 Vt. 66; *Bolling v. State,* 54 Ark. 588; *Brussell v. State,* 91 Ala. 45.)

There was error in admitting testimony of the witness Stine, his name not having been indorsed on the information. (*Kelly v. State,* 51 Neb. 572; *People v. Quick,* 25 N. W. Rep. [Mich.] 302.)

*C. J. Smyth, Attorney General,* and *W. D. Oldham, Deputy Attorney General,* for the state.

NORVAL, J.

An information, consisting of two counts, was filed in the district court of Douglas county, charging, in the first count thereof, August Kastner, Joseph Kastner, and

Louis Kastner with murder in the first degree, by having unlawfully, purposely, and feloniously, and of their deliberate and premeditated malice, killed and murdered one Daniel Tiedeman; and in the second count charging the murder of Tiedeman by said Kastners while they were in the commission of a burglary. Each of the prisoners, to the information, entered a plea of not guilty, and August Kastner, at his request, was granted a separate trial. After a portion of the evidence had been adduced the county attorney was permitted to enter a *nolle prosequi* as to the second count of the information; and at the close of the trial a verdict was returned finding August Kastner guilty of murder in the second degree, under the first count. His motion for a new trial was overruled, and imprisonment in the penitentiary for life was the sentence imposed. By this proceeding he seeks a reversal of this sentence and judgment.

To assist in understanding the discussion of the assignments of error relied upon for reversal it is deemed advisable to briefly state at this time some of the principal facts disclosed by the voluminous record in the case. From the evidence contained in the bill of exceptions it appears that about 3 o'clock in the morning of June 9, 1897, burglars broke and entered the saloon of William Nelson, located at the corner of Thirtieth and Spaulding streets, in the city of Omaha, of which fact the police department was advised during the commission of the burglary, and in response to this information policemen Daniel Tiedeman and A. J. Glover, together with one Riley,—a reporter for one of the city papers,—proceeded at once to Nelson's saloon. On arriving there Tiedeman and Riley went to the rear of the saloon and Glover proceeded to the front of the saloon to prevent the escape of the burglars, and to apprehend them in case they were in the building. As Glover approached the rear of the saloon he discovered, although cloudy and not very light, three persons on the outside of the building; and when he was within a short distance from them one of the three

53

turned and shot Glover in the face with a revolver, and in the body with a shotgun, which rendered Glover unconscious for a time. He identified with reasonable certainty the person who fired these shots as being the accused, August Kastner. The officer also, while upon the witness-stand, described a portion of the clothes of the other two persons. Almost immediately thereafter Daniel Tiedeman came around the building, when he was shot in the abdomen with a shotgun fired by one of the three persons whom Glover had discovered going from the direction of the saloon. Tiedeman, shortly after receiving the wound, died from the effects thereof. He was unable to identify the person who fired the fatal shot, and no one else witnessed the shooting. The prosecution relied principally upon circumstantial evidence to fasten guilt upon the accused. The defendant denied the shooting and introduced evidence tending to establish an alibi. With this brief statement of the case we will proceed to a consideration of the assignments of error argued by counsel.

That portion of the charge of the court is assailed which defines the different degrees of murder. It is not contended, nor can it be successfully asserted, that this portion of the charge enunciated incorrect legal principles, but the argument advanced in favor of the accused is that it was improper to define to the jury the various degrees of murder, inasmuch as the evidence adduced disclosed that Tiedeman was killed by a person who at the time was committing a burglary, consequently the killing constituted murder in the first degree. Had the defendant been tried and convicted under the second count of the information, which charged murder in the commission of another felony,—a burglary,—there would be more force to the argument of his counsel relative to the question now under consideration. But the jury did not convict the accused of murder in the second degree under the second count. This count was eliminated by the county attorney's *nolle prosequi*, and the prosecution was

conducted, and conviction had, under the first count, which charged murder in the first degree and included also all the lesser degrees of homicide; and it was not only proper, but it was clearly the duty of the trial judge, to correctly define to the jury the different degrees of murder. Had he failed to have so instructed the jury, we have no doubt that defendant's counsel would be here complaining of the omission. The accused was not prejudiced by the jury having been advised respecting the distinctions which mark the different degrees of murder.

The court gave the following instruction on its own motion: "19. In case of homicide, the law presumes malice from the unlawful use of a deadly weapon upon a vital part, and when the fact of unlawful killing or shooting causing death is proved, and no evidence tends to show express malice on the one hand, or any justification, mitigation, or excuse on the other, the law implies malice, and the offense is then murder in the second degree. You are instructed that in law a loaded gun is a deadly weapon, and if you believe from the evidence, beyond a reasonable doubt, that defendant August Kastner wantonly and cruelly, and without justification or excuse, shot and caused the death of Daniel Tiedeman with a deadly weapon, then the law presumes such shooting was done maliciously, unless you believe from the evidence it was done without malice." The vice imputed to this instruction by counsel for the accused is that it was not applicable to the case made by the evidence. It is conceded by the same counsel that, where nothing but the killing is shown, malice is presumed, and that in such a case the instruction quoted would be a proper one to give the jury, but where all the circumstances surrounding the homicide, and which shed or cast any light upon the intent with which the act was committed, are proven, such an instruction is improper. This court has stated the rule in homicide cases to be this: Where the fact of killing is shown, and there is no explanatory circumstance proven, malice is presumed and murder in the sec-

ond degree is made out. (*Preuit v. People*, 5 Neb. 377; *Milton v. State*, 6 Neb. 136.) And in *Vollmer v. State*, 24 Neb. 838, it was ruled that an instruction similar to the one above quoted should not have been given, because all the circumstances of the killing had been fully detailed by those who witnessed the homicide, and the decision in the last named case is relied upon to secure a reversal here. In that case all the circumstances surrounding the transaction had been detailed before the jury by those who were present, and saw and heard what transpired. Extenuating facts were proven tending to show want of malice and that life was taken in self-defense. Manifestly the instruction given in that case, that malice was presumed from the facts of the killing and that the crime was murder in the second degree, was highly prejudicial to the defendant. But in the case at bar no person witnessed the shooting other than Tiedeman, whose life was taken. No one testified to any extenuating circumstance which would have warranted the jury in finding the killing was in self-defense, or that the offense was manslaughter. Had the proofs adduced been of such a character as to make it appear that the killing of Tiedeman was either justifiable or that the offense committed was below murder in the second degree, then the instruction criticised would have been misleading and prejudicial. As no mitigating circumstances were proven and no evidence was adduced tending to reduce the offense to manslaughter, it was perfectly competent for the court to inform the jury what facts and circumstances would justify them in finding the accused guilty of murder in the second degree. There is no merit in the suggestion of counsel that said instruction 19 was erroneous because there was no evidence that Tiedeman was shot by the defendant. The many circumstances developed on the trial point to the accused as the person who fired the shot which cost Tiedeman his life.

Complaint is made of the giving of instruction 24, which related to the subject of circumstantial evidence,

Kastner v. State.

upon two grounds: First, because it did not inform the jury that "each circumstance necessary or essential to the conclusion of guilt must be proven beyond a reasonable doubt; and second, because each paragraph of the instructions is not separately numbered." In *Morgan v. State*, 51 Neb. 672, it was ruled that the test to ascertain the sufficiency of circumstantial evidence is whether the facts and circumstances tending to connect the accused with the crime are of such a conclusive character as to exclude, to a moral certainty, every rational hypothesis except that of his guilt; and further, that it is competent for the state to introduce evidence to prove any number of facts and circumstances tending to connect the prisoner with the crime charged, and if the facts so proven are sufficient to establish his guilt beyond a reasonable doubt, he is not entitled to an acquittal because of a failure of proof with respect to one or more of the facts relied upon for conviction. The instruction assailed in the case at bar is within the doctrine of *Morgan v. State, supra.* The instruction contained no erroneous direction to the jury, and if counsel for defendant desired a fuller statement of the rule governing circumstantial evidence, they should have tendered a request embodying the law as they understood it to exist, and, if refused, have presented the question to the lower court in the motion for a new trial, and made the same a basis for an assignment in the petition in error. (*Barr v. City of Omaha*, 42 Neb. 341; *German Nat. Bank of Hastings v. Leonard*, 40 Neb. 676; *Laing v. Nelson*, 40 Neb. 252.) The criticism that instruction 24 contains several propositions which are not separately numbered is unavailing, since no exception to this charge was taken on that ground at the time it was read to the jury. (*Smith v. State*, 4 Neb. 277; *Gibson v. Sullivan*, 18 Neb. 558; *Tagg v. Miller*, 10 Neb. 443; *Morgan v. State*, 51 Neb. 672.)

Instruction 25 was assailed upon the ground last stated, and for the reason already given this objection to the instruction is overruled.

Witnesses Mostyn and Vizzard called by the state testified to certain statements made by Tiedeman just prior to his death relative to the shooting.    Instruction 25 related to the subject of dying declarations and is in this language:

"You are instructed that in prosecutions for murder or homicide the dying statements or declarations of the person with whose murder the accused stands charged, when material, and made under the sense of impending death, are admissible in evidence.   Such declarations are made when the party making them is at the point of death, and when every hope of the world is gone, and when every motive for falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth.   The situation in law is considered as creating an obligation equal to that which is imposed by an oath administered in a court of justice.

"You are instructed that the declarations of Daniel Tiedeman offered in evidence in this case through certain witnesses were admitted under such rule of law.   But the truth or falsity of such declarations of Daniel Tiedeman and the degree of accuracy or inaccuracy in the recital thereof by the witnesses are matters for you to weigh under the same tests as apply to other witnesses, considering all of the circumstances in evidence surrounding each case and each witness."

It is admitted in the brief of counsel for defendant that the first part or paragraph of this instruction correctly enunciates the law relative to dying declarations, but it is strenuously urged that the last portion of the instruction is erroneous, because it singled out the testimony concerning the subject covered by this part of the charge. The language of the court below is not susceptible of such interpretation placed thereon by counsel.   The testimony of no witness is singled out or given undue prominence in the instruction, but the jury were properly advised that the testimony relative to dying declarations was to be weighed under the same rules or tests applicable to other testimony.

Instruction 29 reads as follows: "You are instructed that the information in this case, or the fact that an information has been filed against the defendant, is not to be taken or considered by you as evidence against him. Such information contains simply the charge or allegations made necessary under the law as a basis upon which an accused is to be tried. And you are further instructed that there is evidence in this case that at various times police officers visited the house of the Kastners, having with them a search-warrant or search-warrants. The evidence as to the search-warrants was admitted merely for the purpose of fixing, or aiding in fixing, the date or occasion on which the officers were there, and for giving in part reason for their recollection of other facts and circumstances in evidence which transpired then and there; and such evidence should be considered by you for the purpose only for which it was admitted." We are unable to discover any error prejudicial to the accused in the language quoted. The court confined the jury in the consideration of the evidence relative to search-warrants to the purposes alone for which evidence was admitted. Without this cautionary instruction the evidence on that subject would have prejudiced the minds of the jury against the prisoner. It is unfair to say that the language employed by the trial court assumed or asserted that anything in fact transpired at the Kastner house when the police officers visited it, or that such an impression was conveyed to the triers of fact in the case. Moreover, this instruction is substantially the same as the defendant's eighteenth request; and it is a familiar rule that one cannot complain of an instruction embodying the rule contained in an instruction he has himself requested.

The following instruction was given, of which the accused complains: "30. Certain police officers and detectives have testified in this case on behalf of the state, and you are instructed that under the law of this state, in weighing their testimony, greater care should be used

because of the natural and unavoidable tendency of such persons in procuring and stating evidence against the accused." This instruction is in harmony with the rule announced in *Preuit v. People*, 5 Neb. 378, and *Heldt v. State*, 20 Neb. 492.

It is also urged that instruction 31 is erroneous, a copy of which follows: "If the jury find from the evidence that all the circumstances upon which the prosecution relies for a conviction will as well apply to some other person or persons as to the defendant August Kastner, or if such facts and circumstances shown by the evidence are reconcilable with any reasonable hypothesis other than the guilt of the said defendant, or if such facts and circumstances, together with the direct evidence offered in this case, do not satisfy the minds of the jury beyond a reasonable doubt of the guilt of the defendant, then you should acquit him." The vice imputed by counsel for the accused to the foregoing is that there is not a scintilla of direct evidence in the case. This contention is not borne out by the record before us. While there is no direct evidence that the prisoner fired the fatal shot, ample, direct, and positive evidence was adduced on the trial to establish the *corpus delicti*, which it was the sworn duty of the jurors to consider in forming a verdict in the case, and therefore the criticism made on the instruction is not well taken.

The following request tendered by the defendant the court declined to give to the jury, and such refusal is assigned as error: "21. Evidence has been given of statements, acts, and conduct of defendant at the time of his arrest, which statements, acts, and conduct, it is claimed, tend to show the guilt of the accused. There is no rule of law or human experience by which it can be determined how an innocent man should or would likely act in such a case, or that he can be too little moved for an innocent man. A guilty man, under such circumstances, may appear calm and collected, while an innocent man may appear excited and nervous. The most that can be

said of such evidence is that, while it is receivable and is to be weighed by the jury, it should be received with caution and carefully weighed, and no hasty conclusion of guilt drawn from it by the jury, and in no case is such conduct alone sufficient to authorize a conviction." No reversible error was committed in refusing the foregoing request. The court, by proper instruction, had already properly advised the jury concerning their duty in the weighing of this evidence, and that they alone should determine the weight to be given the testimony of the several witnesses. It had been proven by the state that the defendant at the time of his arrest untruthfully denied having any guns in his possession, and had this instruction been given, the jury would have inferred that, as a rule of law, one innocent of crime would just as likely testify to an untruth about having guns in his possession as if he were guilty. To reverse the cause for the reason urged would be to sanction a doctrine which we deem unsound.

The defendant's thirty-first request, relating to the burden of proof and the *quantum* of evidence required to justify a conviction, was rightly refused, since the instruction given by the court fully covered that feature of the case, and in language quite as favorable to the prisoner. (*Korth v. State*, 46 Neb. 631.) The charge of the court was full and complete, embracing every feature of the case. As to the other requests tendered by the defendant, all that need be said is, so far as they correctly stated the law, the instructions given by the court embraced them.

E. D. Stine, on being called and examined on rebuttal by the state, testified that about March 10, 1896, he visited the Kastner residence and saw there a double-barrel, muzzle-loading shotgun. This testimony was objected to by the accused, because the name of said witness was not indorsed on the information. The general rule in this state is that in a criminal prosecution the names of the witnesses upon whom the state relies to

prove the offense charged must be indorsed on the infor-
mation before the trial. (*Parks v. State*, 20 Neb. 515;
*Gandy v. State*, 24 Neb. 716.) But this rule, like many
others, is not without an exception. Rebutting testi-
mony proper may be adduced by the state without hav-
ing the names of the witnesses indorsed upon the infor-
mation. (*State v. Huckins*, 23 Neb. 309; *Fager v. State*, 49
Neb. 439; *Kelly v. State*, 51 Neb. 572.) The state, in mak-
ing out its case in chief, adduced testimony from wit-
nesses whose names had been properly indorsed on the
information conducing to show the possession by the
defendant of a double-barrel shotgun about the time
Tiedeman was murdered. Afterward, the defendant and
his mother and sister testified that this gun had been
sold by the mother prior to March 1, preceding the homi-
cide. The testimony of Stein, already mentioned, was
thereupon given, showing the same gun in possession of
the defendant on a date subsequent to the time of the al-
leged sale thereof by Mrs. Kastner, the mother. The tes-
timony of Stein was rebutting in its nature, as its intro-
duction was made necessary by the testimony given on
behalf of the prisoner; and the case comes clearly within
the exception of the rule stated by the present chief
justice in *Kelly v. State*, *supra*, in the following language:
"Where it becomes necessary to call persons to testify in
rebuttal of testimony introduced on behalf of an accused
in his defense, or if it is rendered necessary by a material
issue raised for the first time in the case by the evidence
for the defense, and the evidence sought to be introduced
on rebuttal is obviously and purely rebuttal in its na-
ture, it may be given by witnesses whose names were
not indorsed on the information."

The action of the trial court is assailed in admitting
evidence offered by the state relative to holes in the roof
of the Kastner barn. The state had introduced testi-
mony to show that it rained the night the murder was
committed and that the following morning when the
officers went to the Kastner barn they found hanging up

therein a hat, cap, and wammus, that were wet, belonging to the Kastners, while other articles in the barn were dry. The contention of the state was that the articles of clothing named were worn by the defendant and his father and brother at the time Tiedeman was shot, and had become wet on that occasion. The defendant, for the purpose of overcoming any criminating inference to be drawn from the wet clothing, introduced evidence to show that there were holes in the roof of the barn, and therefore the hat, cap, and wammus may have become wet by the roof leaking. In rebuttal the state showed that while there were holes in the roof of the barn they had been made long subsequent to the commission of the crime charged. Such testimony was pertinent and proper, rebutting in its nature, and the defendant has no reasonable cause to complain of the admission thereof.

Jennie Christensen testified on behalf of the defense that she saw Hans Peterson at the Nelson saloon the Monday prior to the shooting, which testimony, on motion of the state, was stricken out as being incompetent, irrelevant, and immaterial, and complaint is now made of this ruling. We are unable to discover the relevancy of this testimony, and counsel have failed to point out sufficient grounds for its retention. It is said Peterson slept in the saloon, and as the Kastners were familiar with the premises they would not have attempted to feloniously enter the building. But Jennie Christensen did not testify that Peterson slept in the saloon, but merely stated that she saw him there the Monday preceding the killing. It was not shown that he was there the night of the murder, so the evidence excluded was entirely too remote to base an inference of the innocence of the accused.

The trial court excluded the offer of the defense to prove by one Hudson that Davis and Kramer, who lived near the Nelson saloon, went with a wagon in the neighborhood where the burglary was committed, and that the day following the murder they were found in Burt

county with shotguns in their possession. It is urged that this incident ought to have been received in evidence "as the basis of a guess that he, Kastner, was not guilty." The jury were not chosen to guess of the innocence or guilt of the defendant. They had a more sacred duty to perform,—to ascertain, by a consideration of competent evidence, whether or not the guilt of the accused of the crime charged was established beyond a reasonable doubt, and to return a verdict accordingly. The jurors, if they were at liberty to venture a guess in the case, could just as well have found that Kastner was innocent, without the offered testimony being before them, as if it had been received. There was no error in excluding the evidence to which reference has been made. It was not shown, nor did the defense tender proofs to establish, that Davis and Kramer were near the saloon during the night the burglary and murder occurred, much less at the hour those offenses were committed.

Policeman A. J. Glover, heretofore mentioned, and who was shot near the Nelson saloon just prior to the killing of Tiedeman, after detailing what transpired and the persons he saw, and especially the one who shot the witness, made answer to questions as follows:

Q. Did you then see the faces of the men as you turned around?

A. I saw it as he turned around to shoot me.

Q. Did you look at him long enough in the face so that you could recognize him?

A. I think I did.

Q. Did you look at him long enough so you could notice how he was dressed?

A. I could not notice him in particular how he was dressed, if he had not been dressed in light. I noticed that he was dressed in light and had on a light soft hat, but it was all as quick as that [witness snapping his finger]. I had to take it in all at a flash.

Q. Did you notice the man's face so that you are able to state who that man was?

A.  Quite positive; yes, sir.

Q.  Are you able to state who it was?

A.  I think I am.

Q.  You may state if you have ever seen that man since.

A.  Yes, sir.

Q.  You may state who it was.

A.  My best judgment is it was August Kastner, the man sitting right there.

This last answer the defense moved to have stricken out as incompetent, which motion was denied; and upon this ruling is founded one of the assignments of error. It is argued that the answer of Glover is equivalent to "I think it was August Kastner," and therefore inadmissible. In the light of the prior and subsequent testimony of the witness, the criticism made upon it is unfair. It clearly appears that the best impression or recollection of Glover was that he recognized the defendant as the person who shot him. It was proper to allow the answer to remain in the record. We have examined the other assignments of error directed against the admission of testimony and do not find any ruling assailed worthy of serious consideration or specific notice at this time. The rules governing the admission of testimony were observed by the trial court and its action is approved.

Lastly, it is urged that the evidence is insufficient to support a verdict of guilty. We have, with that degree of care which the serious nature of the case demands, read and considered the evidence contained in the bill of exceptions, and the conclusion is irresistible that the defendant has no just cause to complain of the verdict returned. The bill of exceptions contains over 900 typewritten pages, and it would serve no useful purpose to summarize the evidence therein recorded. The defendant is indeed fortunate that a verdict in the first degree was not returned against him. He was accorded a fair trial; and no prejudicial error appearing, the judgment is

AFFIRMED.