WARREN M. SCHERER AND RALPH R. NEUDECK, PLAINTIFFS
IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

95 N. W. 2d 329

Filed March 6, 1959. No. 34518.

*Daniel D. Jewell,* for plaintiffs in error.

*Clarence S. Beck,* Attorney General, and *Leslie Bos-laugh,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAP-PELL, and WENKE, JJ.

CHAPPELL, J.

An information filed by the State in the district court for Cuming County charged defendants, Warren M. Scherer and Ralph R. Neudeck, with violations of what is known and cited as the Blue-Sky Law. The information contained nine separate counts involving six separate transactions in which designated securities were alleged to have been willfully and unlawfully sold by defendants to named persons, without the sale of such securities having been authorized by the Department of Banking, hereinafter called the department, and without defendants having secured from said department permits to do business as brokers or salesmen.

In that connection, counts I, V, and VIII separately charged that on designated dates defendants willfully and unlawfully sold described securities to named persons without the sale of such securities having been authorized by the department. Counts II and VI separately charged that on designated dates defendants willfully and unlawfully sold described securities without

having secured from the department permits to do business as brokers or salesmen. On the other hand, counts III, VII, and IX separately charged that on designated dates defendant, Warren M. Scherer, willfully and unlawfully sold described securities to named persons without the sale of such securities having been authorized by the department, and count IV separately charged that on a designated date defendant, Warren M. Scherer, willfully and unlawfully sold described securities without having secured from the department a permit to do business as a broker or salesman.

Defendants first filed separate pleas in abatement, but demurrers thereto were sustained, and thereafter defendants were each duly arraigned and entered pleas of not guilty. At all times here involved they were represented by able counsel.

Thereafter, defendants were tried jointly by consent to a jury. At conclusion of the State's case, defendants' separate motions for directed verdicts of not guilty were overruled, as were renewals thereof made at conclusion of all the evidence.

After submission of the issues to the jury by instructions, of which no complaint is made, two verdicts were returned. One such verdict found defendant, Warren M. Scherer, guilty as charged in each and all of the nine counts. The other verdict found defendant, Ralph R. Neudeck, guilty as charged in counts I, II, V, VI, and VIII. Such verdicts were duly read and received, and the court fixed bail bond of $5,000 for each defendant pending the filing and pendency of motions for new trial. Such motions for new trial were duly filed and overruled, whereupon judgments of conviction were rendered against each defendant, and thereafter a hearing was held with regard to the character of sentence to be imposed. Thereat both defendants and the State adduced evidence from which it appeared without dispute that defendants had each theretofore been convicted of a felony and had served time in prison therefor, and that

each defendant had theretofore or thereafter been charged with other offenses, in some of which they had been convicted and others were still pending.

After being so advised, the court imposed sentence. In that connection, defendant Warren M. Scherer was ordered to pay a fine of $1,000 on count II, and was sentenced to imprisonment in the Nebraska State Penitentiary for 5 years on each of the nine counts upon which he was found guilty, said sentences to run concurrently. Also, defendant Ralph R. Neudeck was ordered to pay a fine of $1,000 on count II, and was sentenced to imprisonment in the Nebraska State Penitentiary for a period of 5 years on each of counts I, II, V, VI, and VIII, upon which he was found guilty, said sentences to run concurrently. Also, each defendant was ordered to pay the costs of prosecution. Thereupon, each defendant filed notice of application for writ of error, and applied for suspension of sentences and the fixing of bail bond pending disposition of error proceedings. Such applications were granted and bail bond for each defendant was fixed at $5,000, which they provided. Thereafter, defendants timely prosecuted error to this court.

In that connection, defendants' joint brief assigned as error only that: "The District Court of Cuming County, Nebraska, erred in excluding evidence and the stipulations in reference to the application form for qualifying a security under the Blue Sky Law, Exhibit 19, the application form for securing a license as a broker, Exhibit 20, and application form for securing a salesman's permit, Exhibit 21, and in excluding such exhibits and in overruling the plaintiffs' in error offers of proof in relation thereto." We do not sustain the assignment.

Defendants do not challenge the sufficiency of the evidence to support the verdicts of guilty rendered against them or the reasonableness of the sentences imposed upon them. In such respect, there is ample evidence in this record that the sales of securities were made

as alleged; that such securities were not exempt under the provisions of the Blue-Sky Law; that the sale of such securities had not been authorized by the department; and that defendants never had any permit from the department to do business as brokers or salesmen. As a matter of fact, it was stipulated that no form of application was ever made or filed with the department for authority qualifying the sale of such securities and that defendants never made or filed any form of application with the department for a permit to do business as brokers or salesmen.

Defendants' affirmative defense, except as hereinafter mentioned, was primarily that the securities sold by them were exempt from provisions of the Blue-Sky Law, which fact they sought to establish only by cross-examination of a witness for the State. In that connection, such issue was submitted to the jury in a manner favorable to defendants, and no complaint is made thereof.

On the other hand, defendants' counsel by cross-examination of the assistant director of the department, and by calling him as their own witness, attempted to prove and offered to prove substantially the following: That the department had prepared exhibit 19, a form of application for qualification of securities; exhibit 20, a form of application for registration as brokers; and exhibit 21, a form of application for salesman permit. In that respect, it was stipulated, subject to objection, that none of such forms had been filed in the office of the Secretary of State. Defendants also offered said exhibits in evidence, and offered to prove that in order to qualify a security for sale, an applicant would be required to complete and file exhibit 19 under oath; that an applicant for registration as a broker would be required to complete and file exhibit 20 under oath; and that an applicant for a salesman's permit would be compelled to complete and file exhibit 21 under oath. All such evidence, except the stipulation that defendants

filed no applications, was excluded upon objections by the State that it was immaterial.

Defendants' contention with regard thereto was in substance that the forms in question were rules and regulations, which, under the provisions of section 84-902, R. R. S. 1943, were required to be filed in the office of the Secretary of State, and that because such forms had not been so filed they were not valid as against defendants, and that such fact was a defense to the charged violations. In that respect, there is no evidence in this record and defendants did not offer any evidence to prove that the department had adopted any rules and regulations under the Blue-Sky Law relating to the forms in question.

However, assuming for purpose of argument only, that the forms in question were rules required by Chapter 84, article 9, R. R. S. 1943, to be filed in the office of the Secretary of State, we are confronted with the question of whether or not such fact in any manner constituted a defense to the crimes with which defendants were charged, convicted, and sentenced. In other words, the real question is whether or not it is necessary for the department to prescribe such forms of application and file them in the office of the Secretary of State before the penal sections of the Blue-Sky Law can become operative and be enforced. We conclude that it is not.

Defendants were charged with violations of specific, clear, and unambiguous statutes of this state and not with a violation of any rule or regulation of the department. In that connection, defendants were charged, convicted, and sentenced for violations of and in conformity with sections 81-333, 81-314, and 81-338, R. R. S. 1943. See, also, related sections in Chapter 81, article 3, R. R. S. 1943.

There is no question about the right or authority of the department in its discretion to prescribe, prepare, and use forms of application. Section 81-316, R. R. S. 1943, provides in part: "The department shall pre-

scribe the forms of application and the forms of all other blanks, documents and records to be used and kept in connection with the administration hereof and, in addition, shall establish and promulgate such rules and regulations concerning the procedure and practice of applicants appearing before it as the department in its discretion may deem expedient and essential to the satisfactory enforcement and administration of said sections." Such section does not impose an absolute duty upon the department to prescribe any particular application forms of any kind, but is generally permissive and directs such department to prescribe only such forms of application as "the department in its discretion may deem expedient and essential to the satisfactory enforcement and administration of said sections."

It is important also to note that section 81-304, R. R. S. 1943, defines at length the meaning of words and phrases used in sections 81-302 to 81-346, R. R. S. 1943, unless the context otherwise indicates, and we find no applicable statutory definition of "rules and regulations." Defendants' argument fallaciously assumes, without citing any applicable precedent, that the Blue-Sky Law requires that all applications filed with the department shall be upon particular forms prescribed by it. As hereinafter noted, it clearly appears that the authority to prescribe forms is entirely discretionary and such forms are not required to be uniform as to all applicants. Rather, the department is given a broad discretion with regard to what it may require a particular applicant to include in his application filed in a particular case.

In that connection, section 81-315, R. R. S. 1943, provides in part: "Every person coming within the provisions of sections 81-302 to 81-346, before issuing, selling, negotiating, offering or attempting to take subscriptions for, or to promote the offering, issuance or sale of any securities not specifically exempt from the provisions of said sections, and for the purpose of procuring authority to issue, sell, negotiate, offer or pro-

mote the offering, issuing or sale of any such nonexempt securities within the State of Nebraska, shall file with the Department of Banking a verified written application for an order of authorization, which said application when and as filed, together with any and all amendments and additions thereto which may be made from time to time, shall become and remain a part of the permanent public records and files of the State of Nebraska. Such application shall state such facts as the department may require. The department may require such application to include * * *." Such section then goes on to enumerate and set forth 17 specific items of information and data which the department in its discretion may require such applications to include.

Also, section 81-305, R. R. S. 1943, provides in part: "No broker shall, within the State of Nebraska, sell or exchange or offer for sale or exchange any securities, or by advertisement or otherwise profess to engage in the business of selling or exchanging or offering for sale or exchange securities, whether or not such securities may be exempted under section 81-312, until such broker shall have secured from the Department of Banking a permit to do business as broker. At the time of applying to the department for such permit, the broker shall pay a filing fee in the amount provided for in section 81-337, and shall file with the department evidence establishing the sound moral character and good business repute of the applicant, and show for what length of time and where such applicant has been engaged in the sale of securities, together with a full statement of all the assets and liabilities of such applicant, and such other information as the department may require."

Considering and construing all of said sections aforesaid together, as we must, it is abundantly clear that the Legislature intended that the department should have a broad discretion with regard to information and data which it may require to be included in applications

made in any particular case. Such provision is entirely reasonable and logical because the facts and circumstances may of necessity vary greatly from one case to another. It is apparent that the department is authorized by the Blue-Sky Law to make whatever requirements it deems expedient and essential in each particular application filed with the department in order to protect the public from exploitation and fraud such as that clearly appearing in this record. We discussed that conclusion at length in Neudeck v. Buettow, 166 Neb. 649, 90 N. W. 2d 254.

We repeat that in this case the prosecution of defendants was based upon alleged violations of particular statutes and not upon the violation of any rule or regulation of the department. There is no evidence in this record, and defendants made no offer of proof, that they or either of them ever complied with or attempted to comply with any part of the Blue-Sky Law. The gist of this case is that defendants failed to obtain authority of any kind but, flaunting and violating the statutes, they sold securities in complete disregard of the Blue-Sky Law, and what is more, defendants made false promises and offered financial inducements to the buyers of securities which they never kept and never intended to perform. Defendants were and are in no position to collaterally raise the alleged invalidity of the forms of application heretofore described and such alleged invalidity was not in any sense a defense to the crimes charged.

In that connection, such conclusions are supported by People v. Calabro, 7 Misc. 2d 732, 170 N. Y. S. 2d 876; Kilgore Nat. Bank v. Federal Petroleum Board, 209 F. 2d 557; State v. Andre, 101 Mont. 366, 54 P. 2d 566; State v. Grimshaw, 49 Wyo. 192, 53 P. 2d 13; Hyde v. State, 131 Tenn. 208, 174 S. W. 1127; and People v. Asta, 343 Mich. 507, 72 N. W. 2d 282. Authorities cited and relied upon by defendants are entirely distinguishable and not controlling here. To discuss them further

would serve no useful purpose except to unduly prolong this opinion.

This court long ago established the general rule that in criminal cases it is not error to exclude evidence which is not substantive proof of any fact relative to the issue, and evidence which does not tend to establish the guilt or innocence of a defendant of a crime charged is immaterial and should be excluded. Burlingim v. State, 61 Neb. 276, 85 N. W. 76; Kastner v. State, 58 Neb. 767, 79 N. W. 713.

For reasons heretofore stated, we conclude that the verdicts, judgments of conviction rendered by the trial court, and the sentences imposed by the trial court should be and hereby are affirmed. All costs are taxed to defendants.

AFFIRMED.

MESSMORE, J., participating on briefs.