STATE OF NEBRASKA, APPELLEE, v. ALAN W. FRIES, JR., APPELLANT.

337 N.W.2d 398

Filed July 22, 1983. No. 82-226.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

BOSLAUGH, J.

The defendant, Alan W. Fries, Jr., was found guilty of 27 counts of violating the laws of Nebraska regulating the registration and sale of securities. He was sentenced to imprisonment for 16 months to 5 years on each count, the sentences on the first three counts to run consecutively. On the remaining counts the sentences run concurrently with the sentence on count III.

The charges were based on nine separate transactions in which the defendant sold capital stock which was not registered. The transactions took place between March 17, 1977, and September 28, 1978. One transaction involved the sale of stock in Solar America, Inc. The other eight transactions involved the sale of stock in Energy Company of America, Inc. Nine counts alleged the defendant sold unregistered securities in violation of Neb. Rev. Stat.

§§ 8-1104 and 8-1117 (Reissue 1977); nine counts alleged the sales were made by the defendant when he was not registered as an agent of the issuer-dealer as required by Neb. Rev. Stat. §§ 8-1103 and 8-1117 (Reissue 1977); and nine counts alleged that the defendant made false representations or failed to disclose material facts in violation of Neb. Rev. Stat. §§ 8-1102(1)(b) and 8-1117 (Reissue 1977).

The record shows that in July 1976 the state Department of Banking and Finance learned that the defendant was selling unregistered securities. The defendant was then contacted by the department, and as a result of meetings with the department, the capital stock of Solar America, Inc., was registered, the corporation was qualified as an issuer-dealer, and the defendant was registered as an agent for the issuer-dealer. The registration order was issued on September 3, 1976.

In the months which followed the registration, the department received inquiries regarding representations made by the defendant about Solar America and its stock. Following an investigation, the department concluded that the defendant was making material, false statements regarding the company to investors. On February 21, 1977, the department issued a stop order prohibiting Solar America from selling its securities, and revoked its registration. The effect of the order was to prohibit the defendant from selling the securities. Barry Lake, legal counsel for the department, testified that the order was sent to the defendant by certified mail and that the stop order was discussed with the defendant on numerous occasions after its issuance. The stop order was never lifted.

Due to the misrepresentations that had been made, the department required the company to make a rescission offer. The defendant complied with this requirement, at least in part, but the department was unable to determine whether all stockholders were notified of the offer.

In late 1978 the department began receiving inquiries about a company named Energy Company of America, Inc. An investigation revealed that the defendant was selling the capital stock of this company. The stock had never been registered, the company was not qualified as an issuer-dealer, and the defendant was not registered as its agent. A cease and desist order was issued on June 21, 1979, ordering the defendant to stop selling securities in Solar America and Energy Company of America.

The nine investors who had purchased unregistered stock from the defendant testified in detail concerning the transactions and the representations made by the defendant. Other witnesses testified concerning the facts which established the representations were false. Solar America, Inc., was dissolved for nonpayment of corporation tax on August 2, 1977; Energy Company of America, Inc., was dissolved for nonpayment of corporation tax on August 2, 1979.

As a part of its investigation, the department subpoenaed bank records relating to the corporations and the defendant and his wife. Cash disbursement schedules were then prepared from the information obtained from the bank records. This evidence showed that over $100,000 of the proceeds from the sale of the stock went into personal accounts of the defendant and his wife.

The defendant assigns as error the admission into evidence of the subpoenas and the bank records obtained as a result of the subpoenas. The defendant also alleges error in the admission of the cash disbursement schedules prepared by the department from these records. The thrust of the defendant's argument is that these exhibits were prejudicial because they did not tend to show the true financial picture of the corporation.

The determination of the admissibility of evidence rests within the sound discretion of the trial court. *State v. Martin*, 198 Neb. 811, 255 N.W.2d 844 (1977).

In *New Omaha Thompson-Houston Electric Co. v. Rombold*, 73 Neb. 259, 270, 102 N.W. 475, 479 (1905), *aff'd* 73 Neb. 272, 106 N.W. 213, we said: "[I]t is a universal rule that when fraud is alleged a broad and liberal latitude should be given the party alleging it in establishing every fact and circumstance connected with its alleged perpetration. The mental and physical condition of the party, all representations and inducements held out to him by the adverse party, should be carefully examined into, and all testimony directly connected with the transaction should be admitted."

The exhibits were admissible because they tended to prove that certain representations about the companies' financial status made by the defendant were made with knowledge that they were false. In *Dosek v. United States*, 405 F.2d 405 (8th Cir. 1968), *cert. denied* 395 U.S. 943, 89 S. Ct. 2014, 23 L. Ed. 2d 461 (1969), a prosecution for the fraudulent sale of securities by mail, the court faced a similar issue. The court said at 409: "Ralph DeWald, the Count IV victim of a fraudulent stock sale, after purchasing Securities Investors stock subsequently loaned defendant $8,000 evidenced by a note, Exhibit 74. The check disbursing the proceeds of the loan is Exhibit 73. Such exhibits and testimony relating thereto were received in evidence over defendant's objection based on relevancy and materiality. After hearing from counsel extensively, the testimony was admitted. The record includes a letter from the defendant and DeWald's testimony that the loan was made for the purpose of aiding Securities Investors to purchase an insurance company, and that the loan proceeds were not used for that purpose. Acquisition of insurance companies was represented by the defendant to be one of the prime objectives of Securities Investors. The evidence relating to the loan has a bearing on the scope and extent of the fraudulent scheme. In Hartzell v. United States, 8 Cir., 72 F.2d 569, 584, a mail fraud case, we held:

" 'In prosecutions of this character, great latitude is allowed in the introduction in evidence of attending circumstances. Smith v. United States (C.C.A. 8) 267 F. 665. "The competency of a collateral fact to be used as the basis of legitimate argument is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth." Williamson v. United States, 207 U.S. 425, 28 S. Ct. 163, 172, 52 L. Ed. 278. False statements outside the scheme charged are competent to show the defendant's fraudulent intent. Busch v. United States (C.C.A. 8) 52 F.2d 79; United States v. Sprinkle (C.C.A. 2) 57 F.2d 968; Vause v. United States (C.C.A. 2) 53 F.2d 346. The evidence admissible to establish the scheme and the intent may be extensive in scope and rests largely within the discretion of the trial judge. These admissions tended to show the nature of the scheme, the falsity of the representations, and the knowledge and intent of the defendant.'

"To like effect, see Llanos v. United States, 9 Cir., 206 F.2d 852, 855; Suetter v. United States, 9 Cir., 140 F.2d 103, 107.

"In any event, the evidence in support of the fraudulent scheme is strong. Defendant's argument on prejudicial error is brief and weak.

"Defendant has not established that any prejudicial error was committed in receiving Exhibits 73 and 74 and the testimony relating thereto."

The defendant next assigns as error the admission into evidence of the stop order issued by the department on February 21, 1977. The defendant argues that he did not receive proper notice of the stop order, and therefore the order should not have been admitted into evidence against him. He concludes there was not sufficient evidence to support a find-

ing that the registration of Solar America had been revoked.

Neb. Rev. Stat. § 8-1109.02 (Reissue 1977) provides: "Upon the entry of an order denying effectiveness to, or suspending or revoking the effectiveness of, a registration statement to register securities under any part of section 8-1109 or 8-1109.01, the director shall promptly notify the issuer of the securities and the applicant or registrant that the order has been entered and of the reason therefor and that within fifteen days after the receipt of a written request the matter will be set down for hearing. If no hearing is requested within fifteen days and none is ordered by the director, the director shall enter his written findings of fact and conclusions of law and the order will remain in effect until it is modified or vacated by the director. If a hearing is requested or ordered, the director, after notice of and opportunity for hearing to the issuer and to the applicant or registrant, shall enter his written findings of fact and conclusions of law and may modify or vacate the order. The director may modify or vacate a stop order if he finds that the conditions which prompted its entry have changed or that it is otherwise in the public interest to do so."

The department was unable to produce a certified mail receipt, and the defendant argues that the lack of a receipt is conclusive proof that defendant was not on notice of the stop order.

The evidence shows that a copy of the stop order was mailed to the defendant and that the defendant discussed the order with the department after its issuance. This evidence supports a conclusion that the defendant had actual notice of the stop order. "Generally a notice is regarded in law as actual when the person sought to be affected by it knows of the existence of the particular fact in question . . . ." 66 C.J.S. *Notice* § 3 at 637 (1950). See, also, *Howell v. Fletcher*, 157 Neb. 196, 59 N.W.2d 359 (1953), in which we stated that proof of mailing a notice is

prima facie proof that it was received. The statute requires that notice be given, but does not require a particular form. The order was properly admitted.

The defendant raises issues regarding the department's compliance with § 8-1109.02; in particular, the provisions affording a right to a hearing and requiring the director to enter written findings of fact and conclusions of law. Whether or not these provisions were complied with is of no relevance in this criminal appeal. These are collateral matters which do not render the defendant's criminal activity less criminal. We said in *Scherer v. State*, 168 Neb. 127, 134-35, 95 N.W.2d 329, 334 (1959): "The gist of this case is that defendants failed to obtain authority of any kind but, flaunting [sic] and violating the statutes, they sold securities in complete disregard of the Blue-Sky Law, and what is more, defendants made false promises and offered financial inducements to the buyers of securities which they never kept and never intended to perform. Defendants were and are in no position to collaterally raise the alleged invalidity of the forms of application heretofore described and such alleged invalidity was not in any sense a defense to the crimes charged.

"In that connection, such conclusions are supported by People v. Calabro, 7 Misc. 2d 732, 170 N.Y.S.2d 876; Kilgore Nat. Bank v. Federal Petroleum Board, 209 F.2d 557; State v. Andre, 101 Mont. 366, 54 P.2d 566; State v. Grimshaw, 49 Wyo. 192, 53 P.2d 13; Hyde v. State, 131 Tenn. 208, 174 S.W. 1127; and People v. Asta, 343 Mich. 507, 72 N.W.2d 282. Authorities cited and relied upon by defendants are entirely distinguishable and not controlling here. To discuss them further would serve no useful purpose except to unduly prolong this opinion.

"This court long ago established the general rule that in criminal cases it is not error to exclude evidence which is not substantive proof of any fact relative to the issue, and evidence which does not tend to establish the guilt or innocence of a defendant of a

crime charged is immaterial and should be excluded. Burlingim v. State, 61 Neb. 276, 85 N.W. 76; Kastner v. State, 58 Neb. 767, 79 N.W. 713.''

During the trial the defense learned that the State had transcribed statements of its witnesses but had not disclosed these statements to the defense. The defendant moved for a mistrial because the State had failed to disclose these statements to the defense. The trial court ordered that the transcriptions be turned over to the defense, and granted a continuance so that the defense could examine the documents. The trial court examined the documents and stated that it had found no exculpatory material therein. The motion for a mistrial was overruled.

In *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the U.S. Supreme Court held that suppression by the prosecution of material evidence favorable to the defendant violates the defendant's right to due process and a fair trial. See, also, *State v. Peery*, 205 Neb. 271, 287 N.W.2d 71 (1980). In the present case the trial court found that no such favorable evidence was withheld.

Any prejudicial effect a failure to disclose the evidence may have had upon the defendant's right to a fair trial was mitigated by the procedure followed by the trial court. The trial court ordered the evidence turned over to the defendant, granted a continuance, and examined the documents itself. See *United States v. Espericueta-Reyes*, 631 F.2d 616 (9th Cir. 1980), in which similar steps were held sufficient to mitigate the prejudice resulting from a failure to disclose inculpatory evidence until the day before trial.

We are unable to consider the statements in question because they were not included in the bill of exceptions in this case. A bill of exceptions is the only vehicle for bringing evidence before the Supreme Court. *State v. Manchester*, 213 Neb. 670, 331 N.W.2d 776 (1983). Evidence which does not appear

in the record can not be considered by this court on appeal. *State v. Spurgeon*, 200 Neb. 719, 265 N.W.2d 224 (1978).

The defendant raises several issues with regard to the instructions given to the jury in this case. The defendant contends that the jury should have been instructed with regard to the exemptions from the requirement for security registration. The State is not required to prove lack of an exemption as an element of the offense; rather, the issue may be raised as a defense to a charge of unlawful sale of unregistered securities. *State v. Buchman*, 361 So. 2d 692 (Fla. 1978). The defendant bears the burden of proof as to a claim of exemption. *Id.*; Neb. Rev. Stat. § 8-1121 (Reissue 1977).

In the present case the record is devoid of any proof that the securities involved fell within any of the exemptions listed in Neb. Rev. Stat. §§ 8-1110 and 8-1111 (Reissue 1977). The court properly refused to instruct regarding the exemptions, as to instruct upon issues not supported by the evidence constitutes error. *Todd v. Boals*, 187 Neb. 51, 187 N.W.2d 284 (1971); *Pulliam v. State*, 167 Neb. 614, 94 N.W.2d 51 (1959).

The defendant also contends that the trial court failed to properly instruct the jury with regard to the intent which the State must prove as an element of the offense. The defendant argues that the court incorrectly instructed with regard to the definition of "willfully." The defendant requested an instruction which defined this term as requiring proof of a "bad purpose either to disobey or disregard the law." The defendant argues that because this was a criminal proceeding, in order to convict, proof of a "specific intent" to violate the law was required.

The jury was instructed as follows: "Willfully . . . means knowingly, as distinguished from accidentally or involuntarily, and bears on the intent required. All that is required is proof beyond a reasonable doubt that the defendant intended to commit the acts

with which he is charged, that is, that he was aware of what he was doing. Proof is not required that the defendant acted with evil motive or with a specific intent that he knew that his conduct violated the law.''

The defendant was charged under the following statutes: ''(1) It shall be unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

''(a) To employ any device, scheme, or artifice to defraud;

''(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

''(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.'' § 8-1102(1).

''(1) It shall be unlawful for any person to transact business in this state as a broker-dealer, issuer-dealer, or agent, except in transactions exempt under section 8-1111, unless he is registered under sections 8-1101 to 8-1124. It shall be unlawful for any broker-dealer to employ an agent unless the agent is registered. It shall be unlawful for an issuer to employ an agent unless the issuer is registered as an issuer-dealer and unless the agent is registered. It shall be unlawful for any person to transact business in this state as an investment adviser unless (a) he is so registered under sections 8-1101 to 8-1124, or (b) he is registered as a broker-dealer under sections 8-1101 to 8-1124, or (c) his only clients in this state are investment companies, as defined in the Investment Company Act of 1940, or insurance companies.'' § 8-1103(1).

''It shall be unlawful for any person to offer or sell any security in this state, except securities exempt under section 8-1110 or when sold in transactions exempt under section 8-1111, unless such security is

registered by notification under section 8-1105 or by coordination under section 8-1106 or by qualification under section 8-1107.'' § 8-1104.

The intent required to sustain a criminal conviction is stated in § 8-1117: ''(1) Any person who *willfully violates* any provision of sections 8-1101 to 8-1124 except section 8-1113, or who willfully violates any rule or order under the provisions of sections 8-1101 to 8-1124, or who willfully violates the provisions of section 8-1113 knowing the statement made to be false or misleading in any material respect shall be guilty of a Class IV felony. No indictment may be returned or information filed under sections 8-1101 to 8-1124 more than five years after the alleged violation.'' (Emphasis supplied.)

While it is generally true that a more culpable mental state is required in a criminal proceeding than is required to impose civil liability under the blue sky laws, it does not appear that the courts have adopted the strict definition of ''willfully'' urged by defendant.

Under the Uniform Securities Act, adopted by more than half the states, including Nebraska, civil liability may be imposed for both intentional and negligent misrepresentations or omissions. 3 A. Bromberg & L. Lowenfels, Securities Fraud & Commodities Fraud § 8.4(210) (1982). However, a more strict requirement is present in criminal cases: ''The state statutes typically require some element of *scienter* for criminal conviction under the fraud provisions. This is usually expressed by reference to 'wilful' violations [§ 8-1117] . . . . However, this may mean no more than that the actor was aware of what he was doing.'' *Id.* at 204.2.

Several courts have expressly held that proof of a specific intent, evil motive, or knowledge that the law was being violated is not required to sustain a criminal conviction under a state's blue sky laws. In *State v. Sheets*, 94 N.M. 356, 366, 610 P.2d 760, 770 (1980), the court said: ''To meet the willfulness

requirement, all that is required is proof that the person acted intentionally in the sense that he was aware of what he was doing." See, also, *People v. Blair*, 195 Colo. 462, 579 P.2d 1133 (1978), in which the court stated that "willfully" means "knowingly" or "awareness." The court held: "There is no requirement that the defendant purposely intended to violate the law in order to be held criminally liable." *Id.* at 468-69, 579 P.2d at 1138-39. In *State v. Gunnison*, 127 Ariz. 115, 120, 618 P.2d 609, 614 (1979), *approved in part, disapproved in part* 127 Ariz. 110, 618 P.2d 604 (1980), the court said: "A specific intent, an evil motive or knowledge that the law was being violated is not required in order to find a criminal violation."

Specific intent need not be proven to sustain a conviction under the fraud provisions, see, e.g., *People v. Blair, supra*, or under the registration provisions, see, e.g., *State v. Sheets, supra*. The instruction given was correct.

The defendant contends that the evidence was insufficient to sustain his conviction for unlawful sale of securities when his registration as an agent of the issuer-dealer had been revoked. Defendant argues that the stop order issued February 21, 1977, did not revoke his registration as an agent.

The stop order revoked the registration of the stock and of Solar America, Inc., the issuer-dealer. See Neb. Rev. Stat. § 8-1101(6) and (7) (Reissue 1977). Section 8-1103(3)(c) provides in part: "The registration of an agent shall not be effective during any period when he is not associated with a registered broker-dealer or issuer-dealer specified in his application or a notice filed with the director." The Draftsmen's Commentary to the corresponding section in the uniform act (§ 201(b)) states in part: "In all the statutes which require agents to register, the agent is not effectively registered unless he is employed by a registered broker-dealer or by an is-

suer.'' L. Loss, Commentary on the Uniform Securities Act 13 (1976).

Defendant's registration as an agent was revoked when the issuer-dealer's registration was revoked. There is sufficient evidence that the defendant was aware of the revocation order and willfully sold securities after his registration as an agent had been revoked.

The defendant's final assignment of error is that the sentences were excessive in the light of his past record.

In *State v. Hadley & Marker*, 205 Neb. 412, 416-17, 288 N.W.2d 37, 40 (1980), we said: ''And finally, it is contended that the sentences were excessive. In the first instance, we have often said that a sentence within statutory limits will not be disturbed on appeal absence [sic] an abuse of discretion on the part of the trial court. See State v. Stephenson, 199 Neb. 362, 258 N.W.2d 824. Moreover, while neither appellant had any previous criminal record, it is apparent from the evidence adduced that both appellants had been warned of the violations well in advance of the time they proceeded to carry out their scheme. Notwithstanding the fact that both their attorney and the Department of Banking had informed them of the violations and had afforded them an opportunity to correct the situation without criminal prosecution, the appellants chose to ignore those warnings and proceed as they wished. Too often what is described as 'white-collar crimes' go unpunished because of the argument that there was 'no violence.' While it may be true that there was no physical violence involved herein, it is likewise true that the taking of an individual's life savings may do more violence to their well-being than the physical abuse. The appellants, without care or concern for their investors who relied upon the appellants' ability to tell a good story, willingly accepted the investors' money in return for illegal securities. Individuals placed their confidence as well as their money in appellants, only

to have the confidence destroyed and the money consumed. So-called 'white-collar' criminals must understand that such behavior will not be tolerated and even first offenders may be required to serve time in prison. Punishment by incarceration in these cases was demanded. The sentences in these cases were not in any manner excessive and may have been said to be light.''

A sentence imposed within statutory limits will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Manchester*, 213 Neb. 670, 331 N.W.2d 776 (1983). The sentences imposed were within statutory limits. See, § 8-1117 and Neb. Rev. Stat. § 28-105 (Reissue 1979).

The sentences imposed were equivalent to a sentence of from 4 to 15 years. Under the circumstances of this case, the sentences imposed were not excessive.

The judgment of the District Court is affirmed.

AFFIRMED.